LARKEN MINNESOTA, INC.,
Larken, Inc., Larken Iowa
City, Inc., Plaintiffs,

v.

Dirk A. WRAY, Al Yip, Lenora K. Chen,
Pine Hill Minnesota, Inc., and Pine Hill,
Minnesota Investments, Inc., Defendants.

Dirk A. WRAY, Al Yip, Lenora K. Chen,
Pine Hill Minnesota, Inc., and Pine Hill,
Minnesota Investments, Inc., Plaintiffs,

v.

LARKEN, INC. and Larken Minnesota,
Inc., Defendants.

Dirk A. WRAY, Al Yip, Lenora K. Chen,
Pine Hill Iowa, Inc., and Pine Hill
Iowa Investments, Inc., Plaintiffs,

v.

LARKEN, INC. and Larken Minnesota,
Inc., Defendants.

Civ. Nos. 3–93–589, 3–93–818 and 3–94–50.

United States District Court,
D. Minnesota,
Third Division.

April 5, 1995.

John E. Brandt, James F. Baldwin (argued), John R. Shoemaker, Murnane Conlin White & Brandt, St. Paul, MN, Frank Hill, Frank Gilstrap, Larry L. Fowler, Robert R. Bodoin (argued), Hill Heard Gilstrap Goetz & Moorhead, Arlington, TX, for Larken Minnesota Inc., Larken Inc., and Larken Iowa City Inc., plaintiffs.

Arthur P. Morello, Jr. (argued), Petit & Martin, C. Thomas Drosman, Drosman & Anapoeli, Newport Beach, CA, for Dirk A. Wray, and Al Yip.

Howard O. Boltz, Jr. (argued), Bryan Cave McPheeters & McRoberts, Los Angeles, CA, for Lenora K. Chen, Pine Hill Minnesota, Inc. and Pine Hill Minnesota Investments Inc., defendants.

## MEMORANDUM AND ORDER

MAGNUSON, Chief Judge.

These consolidated matters are before the Court with regard to the appropriate disposition of the two partnership properties following the failure of the Larken Interests [1] to close their purchase of those properties at a price of $39.35 million. This issue was originally presented to Magistrate Judge Jonathan G. Lebedoff in the form of a motion by the Pine Hill Interests [2] to declare those interests the purchasers of the two properties at the price of $35.5 million. The magistrate judge refused to endorse the Pine Hill Interests' motion and recommended to this Court that it declare the Pine Hill Interests the purchaser of the partnership properties at a compromise price of $37 million. By order dated February 7, 1995, this Court declined to accept the recommendation of the magistrate judge and denied the Pine Hill Interests' motion without prejudice; on

1. The Larken Interests are: Larken, Inc.; Larken Minnesota, Inc.; and, Larken Iowa City, Inc. The relevant partnership agreements also define Dirk Wray and Al Yip to be part of the "Larken Interests"; for purposes of this memorandum, however, those individuals will generally be treated as separate parties. The Court's treatment in this regard is not intended to suggest any alteration of the legal relationship of Wray and Yip to the other parties.

2. The Pine Hill Interests are: Pine Hill Iowa, Inc.; Pine Hill Iowa Investments, Inc.; Pine Hill Minnesota, Inc.; Pine Hill Minnesota Investments, Inc.; and, Lenora K. Chen.

March 29, this Court delivered an oral ruling to the parties that the motion would be granted and indicated that a more detailed, written memorandum and order would be issued subsequently.

## I. BACKGROUND

Although this Court has previously addressed the factual and procedural background of these matters on a number of occasions, a brief review of that background is essential to the resolution of the present issue.

### A. *The Hotel Partnerships*

These cases revolve around two partnership agreements for the ownership and management of two hotel properties. The first partnership, the Larken Iowa City Limited Partnership, was created on January 10, 1992 concerning the ownership and management of a Holiday Inn in Iowa City, Iowa. The general partners of this partnership are Larken Iowa City, Inc. and Pine Hill Iowa, Inc. The limited partners are Larken, Inc., Wray, Yip, Chen, and Pine Hill Iowa Investments, Inc.

The second partnership, the Larken Airport Hotel Limited Partnership, concerned the ownership and management of the Airport Hilton in Bloomington, Minnesota. This partnership was created by an amendment on January 14, 1992 to an existing limited partnership between Larken, Inc. and Larken Minnesota, Inc. Under the amended agreement, the general partners of this partnership are Larken Minnesota, Inc. and Pine Hill Minnesota, Inc. The limited partners are Larken, Inc., Wray, Yip, Chen, and Pine Hill Minnesota Investments, Inc.

Just as the partnerships shared a number of partners, the partnership agreements contained many identical terms. Among these was an unusual provision for the equitable resolution of certain disputes among the partners. Paragraph 10.5 of both agreements provided:

> *Major Decisions Deadlock.* In the event a deadlock develops among the Limited Partners in connection with a Major Decision requiring the unanimous approval of the Limited Partners, the following provisions shall be applicable. The Larken Interests shall determine a price (the "Buy–Sell Price") for which the Larken Interests would be willing to either sell their Partnership Interests to the Pine Hill Interests or purchase the Partnership Interests from the Pine Hill Interests. The Pine Hill Interests shall determine a price (the "Buy–Sell Price") which the Pine Hill Interests would be willing to either sell their Partnership Interests to or purchase the Partnership Interests from the Larken Interests. Each shall then set forth their Buy–Sell Price in a sealed envelope with their name on the face thereof and simultaneously exchange such envelopes with the other. The Larken Interests and the Pine Hill Interests shall, in the presence of the other, open the envelopes. Whichever of the Larken Interest's or the Pine Hill Interest's (the "Buying Partner's") Buy–Sell Price is greater shall be obligated to buy and the other's (the "Selling Partners") shall be obligated to sell its respective Partnership Interests for a price (the "Average Price") equal to the average (calculated for a one percent Partnership Interest) of the two respective Buy–Sell Prices. The Average Price, multiplied by the Selling Partner's Partnership Interests, shall be paid by the Buying Partner to the Selling Partner in cash not later than one hundred twenty (120) days after the date the envelopes containing the Buy–Sell Prices are opened. Upon payment of the Average Price, the Selling Partners shall assign their respective Partnership Interests to the Buying Partner.

*See* ¶ 10.5, Agreement of Limited Partnership of Larken Iowa City Limited Partnership ("Iowa City Agreement"); ¶ 7, Second Amendment of Agreement of Limited Partnership of Larken Airport Hotel Limited Partnership ("Second Amendment") (amending Paragraph 10.5 of Larken Airport Hotel Limited Partnership).[3]

---

**3.** Paragraph 7 of the Second Amendment also contains certain other language specific to the Minnesota partnership. This language has been omitted here solely for the sake of clarity.

As indicated in ¶ 10.5, the unique buy-sell bidding procedure is triggered by a deadlock among the limited partners in connection with a "Major Decision". With respect to Major Decisions, the partnership agreements provide:

> *Major Decision.* No act shall be taken, sum expended, decision made or obligation incurred by the Partnership or General Partner with respect to the following matters (hereinafter called "Major Decisions") unless approved by the Limited Partners:
>
> . . . .
>
> (g) selling or otherwise transferring or encumbering . . . the Hotel or any interest therein.

*See* ¶ 10.2, Iowa City Agreement; ¶ 10.2, Agreement of Limited Partnership of Larken Airport Hotel Limited Partnership.

### B. *The Pine Oakrich Bid*

On or about February 3, 1993, the Pine Oakrich Investment Company, a corporation owned by Chen and her brother James, submitted an offer to purchase both partnership properties for $28.7 million. According to the Larken Interests, the Chens knew that this offer was substantially below the fair market value of the properties and that therefore the offer was unacceptable. The Larken general partners, Larken Iowa City, Inc. and Larken Minnesota, Inc., refused to submit the Pine Oakrich offer to the limited partners of the respective partnerships for approval.

### C. *The Litigation*

The Pine Hill Interests then brought actions on each of the partnerships, contending that the refusal to submit the purchase offer to the limited partners constituted a deadlock that triggered the buy-sell procedure of ¶ 10.5. In these actions, the Pine Hill Interests sought a declaratory judgment that deadlock existed, as well as damages for a variety of breaches of contract and fiduciary duty on the part of the Larken Interests for the management of the two hotel properties. (These damages claims will hereinafter be referred to as the "accounting claims".)

The Larken Interests, in turn, brought an action against the Pine Hill Interests, as well as Wray and Yip. The Larken Interests' complaint alleged that the offer made by Pine Oakrich was a breach of Chen's fiduciary duty to the partnerships inasmuch as it was a deliberate attempt on the part of Chen to force a buyout of the Larken Interests at a price less than the fair market value of the two properties. The complaint also alleged that Wray and Yip had breached their fiduciary duties by disclosing proprietary information to the Pine Hill Interests and that Wray had violated an employment agreement he had with Larken, Inc. for the same reasons. As remedies, the Larken Interests sought, inter alia, equitable rescission of the partnership interests of Wray and Yip, a declaration that deadlock did not exist, and damages.

In mid–1994, the matter came before the Court on the motions of Wray, Yip, and the Pine Hill Interests for partial summary judgment. Wray and Yip sought declarations that they were still limited partners, while the Pine Hill Interests sought judgment as to whether or not the deadlock provisions had been triggered by the refusal of the Larken general partners to submit the Pine Oakrich offer to the limited partners. By order dated July 7, 1994, this Court granted summary judgment as to both of these issues, declaring that "[t]here is deadlock between the partners with respect to the offers to purchase the Hotels, triggering the partners' deadlock resolution obligations set forth in Paragraph 10.5 of the Partnership Agreements." Order of July 7, 1994 ("July 7 Order"), at 10. The Court reached its conclusion that deadlock existed on two grounds: that the refusal of the Larken general partners to submit the Pine Oakrich proposal to the limited partners prevented those parties from participating in a Major Decision; and, that the failure of the limited partners to act on the offer itself effectively constituted a Major Decision, albeit a negative one, because it involved a decision as to the sale or disposition of the hotels. "Under either construction of the present circumstances," this Court held, "a major decision has been made by a general partner without the approval of the limited partners as required by the Partnership Agreements." *Id.* at 7.

Following this declaration by the Court, the Larken Interests and the Pine Hill Interests attempted to carry out the buy-sell procedures. Each set of interests prepared bids, and these bids were opened in the presence of Magistrate Judge Lebedoff. The bids of the parties were, respectively, $43.2 million by the Larken Interests and $35.5 million by the Pine Hill Interests; the Larken Interests were therefore entitled to purchase the two properties for a total of $39.35 million, the "Average Price".

Unfortunately, the Larken Interests were unable or unwilling to raise the necessary funds to close on a purchase of the partnership properties within the 120–day period specified in ¶ 10.5. This period expired on December 9, 1994, on which day the parties met before Magistrate Judge Lebedoff to discuss the disposition of the properties and a possible settlement of the accounting claims. During this meeting, the magistrate judge granted the Larken Interests an additional week to close the purchase; even with this additional time, however, the Larken Interests did not perform.

The Pine Hill Interests thereupon brought a motion to the magistrate judge to be declared the purchaser at their bid price of $35.5 million.[4] Although they had submitted the low bid, the Pine Hill Interests contended that the default of the Larken Interests shifted the right to purchase the properties to them. As to the price, the Pine Hill Interests argued that $35.5 million was appropriate because the failure of the Larken Interests to close rendered their bid void and $35.5 million was the average of the remaining "valid" bids. On this motion, Magistrate Judge Lebedoff issued a Report and Recommendation in which he recommended to this Court that it deny the motion to declare the Pine Hill Interests the purchaser of the properties at their bid price. The magistrate judge did, however, suggest that the Court allow the Pine Hill Interests to purchase the hotels at a compromise price of $37 million.

As noted earlier, this Court declined to adopt the magistrate judge's recommendation. The Court stated that:

> The record at this point does not allow the Court to conclude that the Pine Hill Interests should be allowed to purchase the partnership properties at the bid they submitted or, for that matter, at any price. There is no evidence before the Court that indicates that parties ever agreed to procedures to be followed in the event that a high bidder under the deadlock provisions failed to close within the required period of time. There may be evidence that has not been brought to the Court's attention, but at this time there is not a sufficient basis on which to declare a purchaser or a purchase price.

Order of February 6, 1995, at 7. Based on this lack of evidence, the Court denied the Pine Hill Interests' motion without prejudice.

At a subsequent hearing of the Pine Hill Interests' motion to enforce the putative settlement agreement, the disposition issue was discussed. Both the Pine Hill Interests and the Larken Interests appeared to agree that there was no additional evidence that would assist the Court in construing ¶ 10.5 of the partnership agreements. The Court therefore ordered the parties to submit additional briefing regarding how the partnership properties should be disposed of, if at all, by order of this Court. The parties have submitted this briefing, and the issue was is once again before the Court for resolution.

On March 29, the date on which the accounting claims were set for trial, the Court issued an oral ruling granting the Pine Hill Interests' motion to be declared the purchaser of the partnership properties at $35.5 million.[5] At the time of the oral ruling, the Court indicated that the gravity and complexity of the issues at stake merited a more complete discussion by way of written memorandum to be subsequently issued.

---

4. The Pine Hill Interests also brought a motion to enforce a settlement of the accounting claims they asserted was reached during the meeting on December 9. This motion was resolved adversely to the Pine Hill Interests in this Court's order dated March 22, 1995.

5. Also on March 29, the parties settled the accounting claims.

## II. DISCUSSION

The motion of the Pine Hill Interests will be granted on two independent but related grounds. The first of these relates to the partnership agreements themselves, while the second relates to this Court's equitable authority to ensure that its orders and rulings achieve the purpose for which they were designed.

### A. *The Partnership Agreements*

■ As noted earlier, ¶ 10.5 of the partnership agreements provides a detailed procedure for the "divorce" of these partners in the event that a deadlock develops regarding certain "major decisions". In this case, that procedure was triggered by the deadlock regarding the purchase offers made by Pine Oakrich. Unfortunately, the procedures of ¶ 10.5 failed to end the partnerships successfully because the Larken Interests were unwilling or unable to fulfill their obligations to purchase the partnership properties at the contractually-mandated price. Although the partnership agreements do not explicitly specify the procedures to be followed in these circumstances, the Court finds that the language of ¶ 10.5 implicitly provides a resolution to this problem, and that the purposes of ¶ 10.5 comport with this implicit resolution.

Paragraph 10.5 involves the averaging of two bids, one by the Larken Interests and one by the Pine Hill Interests. These bids are to be the prices at which the respective interests "would be willing to either sell their Partnership Interests ... or purchase the Partnership Interests" of the other. The partnership agreements thus explicitly establishes requirements for those bids that are to be submitted; specifically, there is both a prerequisite and an obligation for each bid: the prerequisite is that the bid be the price at which the respective set of interests is willing to either sell their share in the partnerships or purchase the other interests' share, and the obligation is that the bidder perform. Because ¶ 10.5 identifies the requirements for a bid, it necessarily implies

that a bid which does not meet these requirements is invalid. If a bidder fails either to submit a bid meeting the prerequisite of the paragraph or to complete the necessary transaction, it has, in effect, submitted no bid at all. In such a case, the "Average Price" is simply the amount of the remaining bid; in this case, the $35.5 million bid submitted by the Pine Hill Interests.

This reading of ¶ 10.5 is strongly supported by the manifest purpose of the paragraph: to provide for an orderly divorce of the partners in the event that a deadlock occurred with respect to major partnership decisions. The parties conscientiously drafted a procedure that allowed them to go their separate ways if major partnership decisions could not be unanimously reached; the Court's construction of ¶ 10.5 achieves this goal by ensuring that an orderly divorce takes place even when one of the parties is unwilling or unable to perform the necessary obligations of the divorce procedure.

The necessity of the Court's construction of ¶ 10.5 is perhaps most effectively demonstrated by considering the possibility of abuse. For example, a party who sought to evade its obligations under the partnership agreements could completely thwart the ¶ 10.5 process by submitting outrageously high bids on which it had no intention to perform. This party would "win" each round of bidding, but the partnerships would continue because there would be no possibility that the winning bidder would or could perform.[6]

The Larken Interests' chief argument against this construction of ¶ 10.5 is that it constitutes judicial rewriting of the partnership agreements. They contend that the absence of a specific remedy in the partnership agreements for a violation of the bidding procedure implies that the only remedies available to the Pine Hill Interests for the Larken Interests' default are those remedies generally available to parties for breach of contract, such as damages or specific performance. While not wholly devoid of merit,

---

**6.** Contrary to the arguments of the Larken Interests, Wray, and Yip, it is not necessary for the Court to conclude that a particular bid was in fact motivated by bad faith in order to endorse

this construction of ¶ 10.5; instead, it is only the *possibility* of such abuse, viewed *ex ante,* that supports the conclusion that a failed bid should be viewed as effectively no bid at all.

this narrow construction of ¶ 10.5 is contrary to the goal of that provision in terminating these partnerships, and the Court therefore finds the construction insupportable.

### B. *Equity*

In addition to the contract rationale expressed above, the Court concludes that equitable considerations provide an independent, albeit related, grounds for granting the Pine Hill Interests' motion to be declared the winning bidder at its bid price. These equitable considerations include the general equity authority of the Court and its specific equitable authority to take necessary action to ensure that its prior orders are not rendered meaningless by subsequent developments.

The most important consideration in this regard is the fact that this Court, in the July 7 Order, provided equitable relief in favor of the Pine Hill Interests in the form of a declaratory judgment that a deadlock existed between the parties as defined by the partnership agreements, triggering the buy-sell procedures of ¶ 10.5. This Court contemplated, as does the partnership agreements, that the existence of a deadlock and the invocation of the buy-sell procedure would result in the orderly divorce of the partnerships. This result did not obtain, however, for the sole reason that the Larken Interests were unable or unwilling to purchase the partnership properties.

 This Court has the authority to revisit its July 7 Order and fashion additional relief to prevent that order from being rendered meaningless by the failure of one of the parties to fulfill its obligations. It is clear that a district court is endowed with the authority to modify its injunctive decrees where changed circumstances require modification in order to achieve the purposes underlying the initial grant of relief. *See, e.g., United States v. United Shoe Machinery Corp.,* 391 U.S. 244, 88 S.Ct. 1496, 20 L.Ed.2d 562 (1968) (district court has authority to modify decree according to "changed circumstances"); *Transportation, Inc. v. Mayflower Services, Inc.,* 769 F.2d 952, 954 (4th Cir.1985) ("District courts have inherent equitable power to modify their injunctions

to ensure that any injunctive relief granted fully vindicates the rights accorded by the underlying judgment."); *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1030 (9th Cir.1985) ("When dealing with its equitable powers, a court possesses the intrinsic power to adapt the injunction to meet the needs of a 'new day.'") (quoting *Atlas Scraper & Engineering Co. v. Pursche,* 357 F.2d 296, 298 (9th Cir.1966)), *cert. denied,* 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986). Similarly, district courts have the authority to modify a judgment of specific performance if subsequent events render the judgment unworkable. *See, e.g., Gatewood v. U.S. Cellular Corp.,* 953 F.2d 1393, 1397 (D.C.Cir.1992) ("Equitable principles govern the remedy of specific performance, and they do allow a court, under appropriate circumstances, to enforce some parts of a contract but not others, or with cause, to order performance different in some respects from that set out in the contract.")

In *Domino Group, Inc. v. Charlie Parker Memorial Foundation,* 985 F.2d 417 (8th Cir.1993), the Eighth Circuit considered whether a district court retained authority to fashion supplemental or additional relief where an initial award of specific performance proved unworkable due to the failure of a party subject to the award to perform. There, the district court initially ordered specific performance of a contract to produce certain music concerts. Approximately nine months after entry of the order, the plaintiff returned to the district court, contending that the defendant had "continued to refuse to permit [plaintiff] to perform under the contract," 985 F.2d at 419, and asking for supplemental relief in the form of an award of damages. In analyzing this request, the Eighth Circuit stated:

> [B]y this motion, [plaintiff] sought to invoke the court's equitable powers to enforce its prior decree. Before ruling on such a request, the court must determine whether its specific performance decree has been violated and, if so, what additional remedy or modification of the decree may be appropriate.... [I]f the specific performance remedy proves unworkable,

the court retains the discretion to award ... a supplemental or alternative remedy. *Id.* at 420.

■ As in *Domino Group,* this Court has the authority to fashion an equitable remedy to effectuate its prior declaratory judgment if it determines that one of the parties breached its obligations under that judgment and that the additional remedy in question is appropriate. (In *Domino Group,* the Eighth Circuit endorsed damages as such an additional remedy; it is clear from that opinion, however, that the court considered "modifications" of the district court's initial decree as falling within the category of possible "supplemental or alternative remed[ies].") There can be no question as to whether the Larken Interests breached their obligations under the July 7 Order. While the Larken Interests argue vigorously that their failure to close the purchase of the partnership properties was not in bad faith, the fact is that ¶ 10.5 required them to purchase the properties, and they failed to fulfill that obligation.

The appropriate supplemental relief, given the Larken Interests' failure to perform, is to allow the Pine Hill Interests the opportunity to purchase the partnership properties for the amount of their bid, i.e., $35.5 million. First, any other price would be inequitable to the Pine Hill Interests because their bid price is the upper bound of what those interests could reasonably have expected to pay under the partnership agreements. Under no circumstance can the bidding procedures of ¶ 10.5 require a party to pay *more* for the properties than that party bid. At most, a party can be required to pay the exact amount of its bid, and then only if the other party fails to submit a bid at all or if its bid is exactly the same as the initial bid; in every other case, a winning bidder is required to purchase the properties for an amount less than the amount of its bid.

And second, this result is not inequitable to the Larken Interests. The very problem before the Court is directly attributable to the failure of those interests to perform their own obligations under the July 7 Order. In order to protect their interests, the Larken Interests need only have closed their purchase of the partnership properties. The

Court is also not moved by the excuse offered by the Larken Interests for their default: namely, that interest rates rose abruptly during the period in which closing was to occur. Changes in interest rates are a normal incident of commercial activity, particularly with respect to real estate transactions. By winning the opportunity to purchase the partnership properties, the Larken Interests bore the risk of changes in interest rates. Certainly, had interest rates declined during the relevant period, the Larken Interests would have reaped the benefits of such changes; they should not now be heard to rely on such changes as a rationale for subverting the ¶ 10.5 process.

The Larken Interests argue that the Pine Hill Interests are not entitled to the relief they seek because those interests have failed to demonstrate that this result is "necessary" to make the injured parties, namely, the Pine Hill Interests, "whole". The Court does not agree that its authority is limited to fashioning that additional relief "necessary" to make the Pine Hill Interests "whole". While such compensatory relief may be a proper focus of equitable relief, the Court may also fashion that relief necessary and appropriate under all the circumstances, not merely those relating to the specific harm to the Pine Hill Interests. The circumstances of this case, including the purposes of the Court's July 7 Order, the objectives of the divorce procedures of the partnership agreements, and the failure of the Larken Interests to perform their obligations as the winning bidder, are such that the most appropriate relief is that the Pine Hill Interests be declared the purchaser of the partnership properties at their bid price.

For their part, Wray and Yip argue that the relief sought by the Pine Hill Interests is inequitable because the partnership properties have a fair market value of substantially more than $35.5 million, and the low bid price submitted is thus a breach of the Pine Hill Interests' fiduciary duties to Wray and Yip. Wray and Yip contend that the guiding principle of any equitable resolution of this matter should be "that the limited partners should not suffer because of a dispute between the general partners." Supp. Trial

Brief, at 3. They propose that their interests should be protected either by allowing the Pine Hill Interests to purchase the partnership properties at $39.5 million or by allowing those interests to buy out the Larken Interests proportionately at a price of $35.5 million and to buy out Wray and Yip proportionately at a price of $39.5 million.

The Court is not persuaded by the considerations presented by Wray and Yip. Most importantly, nothing in the partnership agreements suggests even remotely that the price ultimately paid by either set of interests for the properties need bear any relationship to fair market value; the agreements allow the sale of the partnership properties at a price lower than, equivalent to, or even higher than their market value. There was thus no guarantee that the price ultimately paid be higher than fair market value, and it is not inequitable to hold Wray and Yip to a result that was contemplated by the partnership agreements into which they entered. In addition, it is difficult to see how an action taken directly pursuant to the explicit terms of the partnership agreements, i.e., the submission of a bid that meets the requirements of ¶ 10.5, could constitute a breach of a fiduciary duty on the part of the Pine Hill Interests. If any breach of duty to Wray and Yip occurred, it was the failure of the Larken Interests to close on their purchase in a timely fashion, and, as noted earlier, the partnership agreements explicitly define Wray and Yip as being part of those interests. *See* Iowa City Agreement, at 5; Second Amendment, at 2.

In sum, the Court concludes that allowing the Pine Hill Interests to purchase the partnership properties at a total price of $35.5 million is an appropriate equitable resolution of the problems created by the failure of the Larken Interests to close the purchase of the properties as required under the July 7 Order.

### III. CONCLUSION

Accordingly, based on all files, records, and proceedings herein, **IT IS HEREBY ORDERED** THAT:

·(1) The Pine Hill Interests' Motion to Enforce the Settlement ·Agreement Between Larken and Pine Hill and to Declare Pine Hill the Buyer at the Pine Hill Bid Price (Clerk's Doc. No. 45) is GRANTED AS TO THE REQUEST TO DECLARE PINE HILL THE BUYER AT THE PINE HILL BID PRICE. As noted in this Court's oral ruling, the 120–day period in which the Pine Hill Interests must close began on the date of this Court's oral ruling, not from the date of entry of this memorandum.

(2) The Court orally stayed its judgment pending the trial of the accounting issues. Because those claims were settled, there is no longer any reason for the Court to withhold entry of judgment. The Court therefore directs the clerk of court to enter judgment in the form of a declaratory judgment that the Pine Hills Interest shall be declared the buyer of the partnership properties at the Pine Hill bid price.

Let judgment be entered accordingly.