CRYSTAL RESTAURANT MANAGE-
MENT CORPORATION et al.

v.

George A. CALCAGNI, Sr.

Nos. 97–593–Appeal, 98–517–Appeal.

Supreme Court of Rhode Island.

June 18, 1999.

George E. Leiberman, Providence, for
Plaintiffs.

William Mark Russo, Providence, Fran-
cis X. Flaherty, Warwick, Michael E. Har-
rington, Providence, Terrance S. Martie-
sian; Brian C. Newberry, Providence, for
Defendant.

Present WEISBERGER, C.J., and
LEDERBERG, BOURCIER,
FLANDERS, and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

The plaintiffs in these consolidated ap-
peals are a corporation and two of its
shareholders; the defendant is the corpo-
ration's founder, a former shareholder. A
Superior Court trial justice entered an or-
der granting monetary damages to the
defendant, and in an attempt to resolve a
contentious business dispute among the
parties, awarded specific performance in
which the defendant was allowed to repur-
chase stock he previously sold to the indi-
vidual plaintiffs. The defendant, however,

did not carry out the terms of the repurchase. Thereafter, the plaintiffs' motions seeking relief from the original judgment were granted, and an amended judgment was entered denying the previously granted equitable relief but preserving the award of damages. The parties appealed, but later agreed to limit the issues on appeal to a determination of the validity of the issuance of the amended judgment and a determination of which plaintiffs bore responsibility for payment of damages. Having evaluated the parties' arguments and the record before us, we conclude that the trial justice did not err in amending the original judgment. Additionally, we are of the opinion that the responsibility for payment of damages to the defendant rests with the corporation and not the individual plaintiffs.

## Facts and Travel

In the early 1980s, John Barba (Barba), a plaintiff, began employment as a controller for A. Calcagni & Sons, Inc. (Calcagni Construction), a corporation owned by George A. Calcagni, Sr. (Calcagni or defendant). South Isle Foods, a company with which Calcagni Construction had been doing business and which owed Calcagni Construction a large amount of money, went into receivership in 1987, at which time Calcagni purchased from South Isle Foods the franchise rights to four Wendy's International, Inc. (Wendy's) fast-food locations for $5,000. Calcagni was the sole shareholder of Crystal Restaurant Management Corporation (Crystal), one of the plaintiffs in this case, when Crystal was incorporated on July 6, 1987, to own and operate the Wendy's franchises.

In 1988, Calcagni hired Ward Parker (Parker), a plaintiff, the successful operator of a Wendy's location in Somerset, Massachusetts, as the Operations Manager of Crystal. Parker's employment agreement brought the Somerset franchise into Crystals control, and provided Parker with eleven shares, or 15 percent of Crystal, for a nominal sum. At about this same time, Barba, who was still employed by Calcagni Construction but who performed services for Crystal, purchased eleven shares, or 15 percent of Crystal, also for a nominal sum.

In 1991, Wendy's offered Crystal a three-year franchise agreement on two additional locations in Lincoln and Middletown, Rhode Island, with an option to enter into standard twenty-year franchise agreements. Crystal accepted the offer and began operating the Wendy's restaurants in Lincoln and Middletown.

On March 8, 1993, Calcagni sold to Barba and Parker each an additional thirteen shares of stock in Crystal for a total of $130,000, with Calcagni retaining some rights to repurchase this stock. Pursuant to the agreement, Calcagni had the option of repurchasing the stock for the original purchase price plus interest accruing at about 10 percent per year. After that purchase, Calcagni, Barba, and Parker each owned twenty-four shares or one-third of Crystal.

In December of 1993, Calcagni delivered possession of his twenty-four shares in Crystal to Old Stone Bank in accordance with a pledge agreement securing a loan from the bank to Calcagni Construction. Thereafter, Rover Investments, Inc. (Rover), a corporation wholly owned by Calcagni's son, George A. Calcagni, Jr., purchased the twenty-four shares of Crystal from Old Stone Bank for $50,000. It appears that Barba and Parker were aware of this transaction and did not object to the purchase.

Eventually, however, a conflict arose regarding the agreement by which Calcagni could repurchase the twenty-six shares of stock in Crystal that in March 1993 he had sold to Barba and Parker. On September 19, 1994, Calcagni attempted to repurchase the shares, but Barba and Parker rejected his offer, claiming that repurchase was contingent on Calcagni's retrieval of the shares owned by Rover and on his assurance of continued employment for Barba and Parker. According to plaintiffs, Calcagni threatened to "destroy" Barba and

Parker if they did not agree to the repurchase without conditions. Allegedly, at this meeting, Calcagni was careful to mention that he was aware of how vital the Lincoln and Middletown franchises were to Crystal's success and financial bottom line. With this destructive intent, Calcagni apparently refused to exercise the option he held as a named franchise owner that Crystal needed in order to obtain those franchises.

At some point, Barba and Parker, without Calcagni's agreement, utilized monies from Crystal to form another corporation, Sparkle Restaurant Management Corporation (Sparkle).[1]

On September 12, 1995, Crystal, along with Parker and Barba as individual plaintiffs (collectively, plaintiffs), filed a civil action in the Superior Court, seeking damages and the franchise rights to the two Wendy's restaurants in Lincoln and Middletown, along with a declaration that Calcagni had no right to remain a named franchise owner. The plaintiffs also filed a motion for a temporary restraining order to prevent Wendy's from "taking back" the restaurants at issue. On October 13, 1995, Calcagni filed an answer along with a counterclaim. On September 20, 1996, Parker and Barba responded to Calcagni's counterclaim and filed their own counterclaims.

Meanwhile, the Rhode Island Depositors Economic Protection Corporation (DEPCO), commenced a civil action against Calcagni, Crystal, Barba, and Parker. In April of 1996, DEPCO's judgment against Calcagni became final. In October of 1996, DEPCO filed a miscellaneous action to protect its interests, and on November 12, 1996, a Superior Court justice issued an order requiring, among other things, that Calcagni use any recovery in the action involving Crystal, Barba, and Parker to satisfy the DEPCO judgment.

On January 21, 1997, trial commenced before a jury in the Superior Court. The trial justice treated the case as an equitable dissolution and determined that the best course of action would be a court-supervised buy-out. Although a jury returned a unanimous verdict that was largely in favor of plaintiffs, on February 19, 1997, the trial justice declared that he would treat the verdict as advisory. In an order filed on April 4, 1997, the trial justice gave Calcagni ninety days to tender the purchase price. The jury awarded damages in favor of Calcagni in the amount of $53,899, and the trial justice accepted this figure, awarding Calcagni that amount plus interest.

At a hearing on February 28, 1997, Calcagni informed the trial justice that he would have the entire purchase price by the first week of March 1997, and DEPCO was allowed to intervene on March 3, 1997. On March 18, 1997, the trial justice indicated that he would issue a stay order to prevent the problems that would inevitably occur if "monies and stock certificates were to be transferred * * * and, therefore, the management and control and direction of [Crystal] in its daily operations were to change accordingly, and the Supreme Court were to reverse this Court * * *." The stay order included ten instructions, among them limitations on Crystals financial activities and a prohibition on the parties' attorneys, who had been appointed escrow agents, from turning over any money or certificates entrusted to them until further order of the court. On April 4, 1997, the stay order and the judgment in which the trial justice gave Calcagni ninety days to deposit the money in escrow were issued.

On April 16, 1997, Crystal, Barba, and Parker filed a notice of appeal of the April 4, 1997 judgment. In May, Calcagni moved to vacate the April stay, and in June, he moved to modify it. On July 9,

---

1. Sparkle acquired the franchises to two Wendy's restaurants in North Kingstown and Smithfield, Rhode Island.

1997, the court denied Calcagni's motion to modify the stay order but granted Calcagni an extension until July 23, 1997, to deposit the purchase price of the stock into the escrow account. According to plaintiffs, Calcagni failed to abide by this order.

On August 6, 1997, before plaintiffs' appeal of the April 4, 1997 judgment was heard, plaintiffs filed a motion for relief from judgment pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure, based on Calcagni's continued failure to obey the courts order, and on August 29, 1997, they filed a second Rule 60(b) motion based on allegedly newly discovered evidence. On September 21, 1998, DEPCO moved for payment of judgment proceeds.

On March 2, 1998, this Court remanded plaintiffs' appeal of April 16, 1997, to the Superior Court for consideration of the Rule 60 motions. The court noted in the April 24, 1998 hearing that "the circumstances have changed drastically and significantly regarding [Calcagni's] indebtedness * * * [and][i]t is now readily apparent that [specific performance] is unavailing no matter from whose viewpoint or just from the overall perspective of resolving this dispute." The order granting both Rule 60(b) motions was entered on May 5, 1998, and the original judgment was amended "to vacate the equitable relief in the form of specific performance," but preserved the monetary award to Calcagni. Judgment was not entered until October 2, 1998. Both defendant and plaintiffs filed timely notices of appeal from the amended judgment.

## Issues on Appeal

On March 16, 1999, this Court entered an order consolidating both appeals of the amended judgment, and the parties agreed to an expedited briefing schedule and to limit the issues before this Court to (1) "defendant's appeal of the Amended Judgment dated October 2, 1998," and (2) "whether [Crystal] or individual plaintiffs

John Barba and Ward Parker * * * are responsible for monetary damages." In the stipulation of the parties, plaintiffs specifically reserved their right to appeal from the "April 4, 1997 Judgment or any of the other issues raised by their appeal from the Amended Judgment." On March 19, 1999, this Court denied Calcagni's motion to modify the terms of the stay order, and ordered the parties to enter into a stipulation agreeing to an expedited briefing schedule.

On appeal, Calcagni argued that the Superior Court should not have amended the judgment because his personal financial condition was taken into account by the trial justice in the original decision in which specific performance was awarded. In Calcagni's opinion, therefore, by amending the judgment, the trial justice reversed his prior findings of fact and conclusions of law regarding Calcagni's right to repurchase the stock. Crystal, Barba, and Parker argued that this Court should affirm the trial justice's vacating the equitable relief granted in the original judgment because: (1) Calcagni failed to satisfy the original judgment; (2) newly discovered evidence showed that Calcagni was in fact financially unable to satisfy the original judgment; (3) in his brief, Calcagni failed to address the propriety of the trial justice's granting of plaintiff's Rule 60(b) motion based on Calcagni's failure to perform; and (4) Calcagni failed to appeal the Superior Court stay order. Crystal, Barba, and Parker also urged this Court to determine that Crystal, rather than the individual plaintiffs, was responsible for paying Calcagni one-third of Crystal's profits for the year 1993 and argued that Calcagni waived the claim that the individual plaintiffs were responsible for payment of shared profits.

As an intervenor, DEPCO also filed a brief on appeal, urging this Court to take steps to protect its interest, no matter what the outcome.

## Equitable Relief

The original judgment was entered on April 4, 1997, and ordered specific perfor-

mance in favor of Calcagni by requiring Barba and Parker to sell to Calcagni all shares of stock in Crystal covered by the repurchase agreement. In addition, the judgment required Barba and Parker to sell to Calcagni the remaining Crystal stock they owned. Calcagni was given ninety days to place the purchase price in escrow. Calcagni apparently repeatedly assured the court that he could raise the purchase price within the allotted time period, but he did not succeed in doing so.

On August 6, 1997, Crystal, Barba, and Parker filed a motion for relief from judgment pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure.[2] They argued that because Calcagni had failed to comply with the judgment, the judgment should be amended to a judgment for monetary damages. On August 29, 1997, plaintiffs filed a second motion under the same rule, this time seeking relief from judgment on the grounds that allegedly newly discovered evidence proved that Calcagni, contrary to his assertions, was not able to produce the purchase price of the stock.

The trial justice granted both motions for relief from judgment on May 5, 1998. The original judgment was "amended to vacate the equitable relief in the form of specific performance," but the monetary award of profit redistribution to Calcagni was not altered.

As an initial matter, we assume without deciding that the trial justice did not err in treating the jury verdict as advisory and in granting specific performance in favor of Calcagni in the first instance. At issue before us is the subsequent amendment of the original judgment granting equitable relief. First we shall address the propriety of granting plaintiffs' Rule 60(b) motions on the basis of Calcagni's failure to abide by the court order. "Motions to vacate a judgment are addressed to the sound discretion of the trial justice, and that justice's ruling will not be disturbed on appeal, absent a showing of abuse of discretion." *Forcier v. Forcier*, 558 A.2d 212, 214 (R.I.1989). Therefore, we must determine whether the trial justice abused his discretion by vacating the equitable relief.

"It is well established that the party who wishes to avail himself of the unique remedy of specific performance must show that he was ready, able and willing to perform his part of the contract." *Griffin v. Zapata*, 570 A.2d 659, 662 (R.I.1990) (quoting *Jakober v. E.M. Loew's Capitol Theatre, Inc.*, 107 R.I. 104, 114, 265 A.2d 429, 435 (1970)). Here, the trial justice provided ample opportunity for Calcagni to place the required funds into an escrow account and even granted an extension of several weeks so that defendant could amass the capital. The defendant, however, failed to abide by the court's order. Calcagni could have had the relief he requested if he had fulfilled his obligation under the original judgment.

Further, the equitable relief was granted in part to sever Calcagni's business ties to Barba and Parker. By allowing Calcagni to repurchase all the shares that had been alienated to either Barba or Parker and not solely the twenty-six

---

**2.** Rule 60(b) of the Superior Court Rules of Civil Procedure provides in pertinent part: *"Mistake; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment."

shares subject to the repurchase agreement, the trial justice attempted to place some distance between the feuding former business partners in order to put an end to what had become incessant litigation. "The grant [of specific performance] is not a matter of right, but rests in the sound discretion of the trial justice." *Jakober*, 107 R.I. at 114, 265 A.2d at 435. If defendant was unable to raise the money to purchase the shares in accordance with the court-ordered specific performance, then the purpose behind the equitable relief was subverted by the very party it was intended to benefit. Once Calcagni failed to comply with the conditions of the specific performance, his right to regain his position as a shareholder of Crystal was terminated.

The plaintiffs cited a case that is in some ways strikingly similar to the case at bar. In *Larken Minnesota, Inc. v. Wray*, 881 F.Supp. 1413 (D.Minn.1995), *aff'd*, 89 F.3d 841 (8th Cir.1996), a deadlock arose between two groups of limited partners. A provision in the partnership agreement provided for a mechanism by which in case of deadlock, one group of partners would purchase the interests of the other group of partners. *Larken*, 881 F.Supp. at 1415. Despite the mechanism, litigation ensued, and the District Court found that a deadlock did indeed exist. *Id.* at 1416. The buy-out proceeded but ground to a halt when the purchasing group of partners failed to raise the money necessary to perform. *Id.* at 1417. Even after a magistrate judge granted the purchasers an extension, they still did not perform. *Id.*

The *Larken* court eventually issued a ruling granting the motion made by the group being bought out that it be declared purchaser on the basis of the agreement itself and on the court's equitable authority. *Id.* at 1418. Specifically, the District Court held that it had "the authority to modify a judgment of specific performance if subsequent events render the judgment unworkable." *Id.* at 1419. The court noted that injunctive decrees may be modified

"where changed circumstances require modification in order to achieve the purposes underlying the initial grant of relief," *id.*, and it cited a case, *Domino Group, Inc. v. Charlie Parker Memorial Foundation*, 985 F.2d 417, 420 (8th Cir. 1993), in which the Eighth Circuit held that a District Court had authority to fashion an alternative remedy in the event that a prior order of specific performance was rendered unworkable. The Eighth Circuit later affirmed the District Court's holding in *Larken Minnesota, Inc. v. Wray*, 89 F.3d 841 (8th Cir.1996).

In this case, Calcagni neither carried out the terms specified in the judgment nor otherwise established his financial ability to implement the specific performance granted in his favor within the ninety days provided in the original judgment or by the extended deadline. The alleged letters of credit that Calcagni presented to the court were not bona fide but were conditional and unsatisfactory. Moreover, the existence of the November 12, 1996 Superior Court order allowing DEPCO to reach and apply any judgment awarded to Calcagni towards satisfaction of DEPCO's judgment against Calcagni renders his potential recovery in the instant matter the virtual property of DEPCO. Consequently, we hold that the trial justice did not abuse his discretion by granting plaintiffs' motion for relief of judgment based on defendant's failure to abide by the court order to place certain funds into an escrow account. We conclude, therefore, that the trial justice acted within his discretion when he vacated the equitable relief previously granted, given that the party for whose benefit it was granted failed to perform his responsibilities therein.

Because we affirm the amendment to the judgment in response to plaintiffs' August 9, 1997 Rule 60(b) motion, we need not engage in a lengthy analysis of the propriety of granting plaintiffs' August 29, 1997 Rule 60(b) motion on the basis of allegedly newly discovered evidence. The plaintiffs claimed that two

pieces of evidence not discoverable prior to the judgment of April 4, 1997, proved that defendant had misled the court about his financial status and that his status had deteriorated to the point that complying with the original judgment was an impossibility. The evidence apparently consisted of Calcagni's tax records, as well as judgments entered against defendant in favor of National Grange Mutual Insurance Company (National Grange) in the amount of $600,000 and in favor of one Melissa D'Andrea for $56,583.01. Calcagni claimed on appeal that this Rule 60(b) motion should not have been granted because the evidence that plaintiffs claimed was new had in fact been available to the court during trial. We need not, however, determine whether or not the evidence of Calcagni's financial condition qualified as "newly discovered." The outcome of this case would be the same if we were to hold that the trial justice should not have granted the second motion because the granting of the first Rule 60(b) motion that vacated the equitable relief and amended the judgment was not an abuse of discretion. We thus affirm the trial justice's actions in vacating the equitable relief previously granted, without deciding whether the evidence was indeed "newly discovered."

## Monetary Damages

The partners apparently had an oral understanding that profits in Crystal were to be shared equally. The trial justice accepted the "advisory" jury's determination of damages and awarded Calcagni damages in the amount of $53,899 plus interest, to compensate him for his portion of Crystal's profits for 1993. Subsequent to December of 1993, when defendant transferred his remaining shares in Crystal to Old Stone Bank, defendant was no longer a shareholder and thus had no right to shared profits. After vacating the equitable relief, the trial justice specifically preserved this non-equitable remedy in the order granting plaintiffs' Rule 60(b) motions. The amended judgment was thus limited to damage awards in favor of defendant. We note that there is no indication in the record that Calcagni contested the amount of damages recommended by the jury and awarded by the trial justice in the original judgment. The issue to be decided, then, is which plaintiffs are responsible for satisfying this judgment.

■ The plaintiffs filed a notice of appeal from the amended judgment listing several issues to be addressed. The parties, however, stipulated that the only issue before this Court in respect to plaintiffs' appeal of the amended judgment was the liability of the various plaintiffs for payment of damages to Calcagni. The relevant portion of plaintiffs' appeal states that plaintiffs appealed the amended judgment "insofar as it * * * require[d] individual plaintiffs John Barba and Ward Parker, rather than plaintiff Crystal * * * to pay [Calcagni's damages]." The brief submitted collectively by Crystal, Barba, and Parker took the position that Crystal was responsible for payment of money damages.[3] The plaintiffs pointed out that the jury verdict form stated that Calcagni was to receive his share of 1993 profits, to be paid to him by Crystal. Additionally, plaintiffs argued that Calcagni had waived the argument that Barba and Parker were responsible for paying his award by failing to address the issue in his brief.

It is true that Calcagni failed to discuss which of the plaintiffs bore responsibility for payment of his damages. At oral argument, counsel for Calcagni declined to take a position on whether Crystal or the individual plaintiffs were responsible for the

---

3. Because plaintiffs' collective avowed position more precisely promotes the interests of Barba and Parker and not of Crystal, the filing of separate briefs, prepared by attorneys who represented the adverse interests of Crystal and individual plaintiffs would have been appropriate. It is not apparent that Crystal's interests have been adequately represented on this issue. Because Crystal is a signatory on the brief, we shall assume that the arguments made therein represent plaintiffs' collective interests.

damages. Consequently, because this issue is undisputed, we hold that Crystal is responsible for payment of damages to Calcagni.

## Conclusion

In their original complaint, plaintiffs sought the franchise rights to several Wendy's restaurants along with a declaration that Calcagni had no right to remain a named franchise owner. In order to address this issue, we remand this case to the Superior Court with our direction that the trial justice consider whether the franchise rights to the restaurants at issue should be required to be transferred to Crystal and what compensation, if any, should be awarded to Calcagni for those rights. Additionally, we vacate the stay order that prohibited, among other things, the escrow agents from turning over any money or certificates entrusted to them.

In sum, we deny and dismiss the defendant's appeal and affirm the amended judgment of the Superior Court. We sustain the plaintiffs' appeal in respect to holding that Crystal rather than Barba and Parker bears responsibility for paying the damages awarded to the defendant. The papers in this case are remanded to the Superior Court for further proceedings in accordance with this opinion.