DECISION
Defendant Kelly Picerne, Inc. (KP) filed a motion for reconsideration of this Court's December 6, 2010 Decision which held, among other things, that KP had breached its fiduciary duty to Plaintiffs, the limited partners (Limited Partners) of Quaker Towers Associates (QTA or Partnership), and awarded Plaintiffs (1) the difference between the price paid by PIC for the Recoll Note and the amount paid by QTA to extinguish it; and (2) a full accounting of the partnership distributions and reserve account. See Friedman v. Kelly Picerne, Inc., No. PB 05-1193, 2010 WL 5042896 (R.I. Super. Ct. Dec. 6, 2010). Defendant seeks a reconsideration of the Court's determinations as to liability and damages in connection with the breach of fiduciary duty claim. *Page 2 
 I Facts and Travel
The facts and travel of this case have been well-documented in a prior written decision (Decision) of this Court. See Friedman v.Kelly Picerne, Inc., No. PB 05-1193, 2010 WL 5042896 (R.I. Super. Ct. Dec. 6, 2010). Therefore, the Court will not repeat the facts and travel of this case.[1]
 II Standard of Review
The Rhode Island Superior Court Rules of Civil Procedure, similar to the Federal Rules of Civil Procedure, do not specifically provide for motions to reconsider. School Comm. of City of Cranston v.Bergin-Andrews, 984 A.2d 629, 649 (R.I. 2009). However, our Supreme Court applies a liberal interpretation of the rules, and "look[s] to substance, not labels." Sarni v. Melocarro,113 R.I. 630, 636, 324 A.2d 648, 651 (1974). It is well settled that a motion to reconsider should be treated as a motion to vacate under Super. R. Civ. P. 60(b). Bergin-Andrews,984 A.2d at 649 (citing Keystone ElevatorCo. v. Johnson Wales Univ.,850 A.2d 912, 916 (R.I. 2004)). Rule 60(b) provides that under certain circumstances "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from final judgment, order, or proceeding. . . ." Super. R. Civ. P. 60(b). A motion to vacate under Rule 60(b) "is addressed to the trial justice's sound judicial discretion and `will not be disturbed on appeal, absent a showing of abuse of discretion.'" Keystone Elevator Co., 850 A.2d at 916 (quotingCrystal Rest. Mgmt. Corp. v. Calcagni,732 A.2d 706, 710 (R.I. 1999)). *Page 3 
However, Rule 60(b) is not "a vehicle for the motion judge to reconsider the previous judgments in light of later-discovered legal authority that could have and should have been presented to the court before the original judgment entered." Jackson v. MedicalCoaches, 734 A.2d 502, 505 (R.I. 1999) (citations omitted). It does not authorize "`a motion merely for reconsideration of a legal issue . . . where the motion is nothing more than a request that the [trial] court change its mind.'" Jackson,734 A.2d at 508 n. 8 (citing United States v. Williams,674 F.2d 310, 312-13 (4th Cir. 1982)); see also Cashner v.Freedom Stores, Inc., 98 F.3d 572, 577 (10th Cir. 1996) (noting that Rule 60(b) is not intended "to allow a party merely to reargue an issue previously addressed by the court when the reargument merely advances new arguments or supporting facts which were available for presentation at the time of the original argument").
 III Discussion A Breach of Fiduciary Duty
In support of its motion for reconsideration, KP asserts that it seeks reconsideration of the Court's Decision to prevent a manifest injustice. KP contends that absent evidence in the record as to what Plaintiffs would have done if KP had fully disclosed PIC's negotiations with the FDIC, Plaintiffs failed to establish a breach of fiduciary duty claim. See Griffin v. Fowler,260 Ga. App. 443, 445, 579 S.E.2d 848, 850 (Ga. Ct. App. 2003) (establishing that "a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach"). In particular, KP challenges the Court's finding that KP's non-disclosure was the proximate cause of Plaintiffs' damages. *Page 4 
It is well settled that a corporate general partner and the directors of that general partner owe a fiduciary duty of loyalty to a limited partnership and its limited partners.[2] See Zoren v.Genesis Energy, L.P., 836 A.2d 521, 528 (Del. Ch. 2003). As a fiduciary, the general partner owes a duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect. Meinhard v. Salmon,249 N.Y. 458, 467-68 164 N.E. 545, 548 (1928). This duty of loyalty — particularly with a general partner of a limited partnership, managing partner of a general partnership or controlling shareholder of a close corporation — is one of the highest duties recognized in law. See Huffington,532 S.W.2d 576, 579 (Tex. 1976); see also Triple Five ofMinnesota v. Simon, 404 F.3d 1088, 1097 (8th Cir. 2005) (citingWelder v. Green, 985 S.W.2d 170, 175 (Tex. Ct. App. 1998) (stating that a managing partner owes "the highest fiduciary duty to his partners"); see also IV Alan R. Bromberg Larry E. Ribstein, OnPartnership § 16.07(b) (2008). Indeed, because the general partner of a limited partnership typically has the exclusive power and authority to control and manage the partnership, it owes the limited partners an even greater fiduciary duty than is imposed on general partners in a typical general partnership. Palmer v.Fuqua, 641 F.2d 1146, 1155 (5th Cir. 1981). *Page 5 
It follows, therefore, that the scope of recovery for a breach of the duty of loyalty is not to be determined narrowly.Thorpe v. CERBCO, Inc., 676 A.2d 436, 445 (Del. 1996). An action for the breach of fiduciary duty "`is a prophylactic rule intended to remove all incentive to breach — not simply to compensate for damages in the event of a breach.'" Milbank, Tweed, Hadley McCloy v. Boon,13 F.3d 537, 542-43 (2d Cir. 1994) (quoting ABKCO Music,Inc. v. Harrisongs Music, Ltd.,722 F.2d 988, 995-96 (2d Cir. 1983). When dealing with a controlling or managing fiduciary,
 "`[t]he rule, inveterate and uncompromising in its rigidity, does not rest upon the narrow ground of injury or damage to the corporation resulting from a betrayal of confidence, but upon a broader foundation of a wise public policy that, for the purpose of removing all temptation, extinguishes all possibility of profit flowing from a breach of the confidence imposed by the fiduciary.'" Thorpe v. CERBCO, Inc., 676 A.2d 436, 445 (Del. 1996) (quoting Guth v. Loft, Inc., 5 A.2d 503, 510 (Del. 1939)).
For that reason, the "absence of specific damage to a beneficiary is not the sole test for determining disloyalty by one occupying a fiduciary position." In re Tri-Star Pictures,634 A.2d 319, 334 (Del. 1993).
Breach of loyalty claims brought against a controlling fiduciary "comprise a special breed of cases that often loosens normally stringent requirements of causation and damage." Milbank,722 F.2d at 543; see also ABCKO, 722 F.2d at 996 (holding that once the court determined that the controlling fiduciary's conduct constituted a breach of fiduciary duty, "the district judge was not required to find a `but for' relationship between [the fiduciary's] conduct and [plaintiff's] lack of success"). It would be anomalous to permit a usurping partner to hide behind protestations of financial inability given that the partner often has substantial control over such circumstances. See II Alan R. Bromberg Larry E. Ribstein, OnPartnership § 6.07(d) (2008) *Page 6 
(explaining that corporate opportunity doctrine has been applied to partnerships to (1) prevent the improper use of partnership assets and information, and (2) ensure that the partners will exercise their energies for the benefit of the partnership rather than for their personal gain).
Moreover, where, as here, a fiduciary relationship exists between the General Partner and Limited Partners, the burden of proving fair dealing shifts to the fiduciary. See Konover Dev. Corp. v.Zeller, 228 Conn. 206, 229-30, 635 A.2d 798, 810 (1994); seealso Tomaino v. Concord Oil of Newport, Inc.,709 A.2d 1016, 1021 (R.I. 1998); Horowitz v. Le Lacheure,81 R.I. 235, 239, 101 A.2d 483, 486 (1953). Indeed, the fiduciary may not simply hide behind hollow assertions that the plaintiff-corporation could not avail itself of the opportunity; rather, the fiduciary must establish by clear and convincing evidence that a corporation was unable or unwilling to take advantage of a corporate opportunity. See Konover,228 Conn. at 229-30; see also Norman v. Elkin,617 F. Supp.2d 303, 312-13 (D. Del. 2009) (stating that a defendant faces a significant burden in establishing that a corporation was financially unable to take advantage of a corporate opportunity);General Video Corp. v. Kertesz, No. 1922-VCL,2008 WL 5247120, at *19 (Del. Ch. Dec. 17, 2008) (citingSterianou ex rel. Stephanis v. Yiannatsis, No. 1508, 1993 WL 437487, at *4 (Del. Ch. Oct. 4, 1993)) (stating that the fiduciary must establish that such financial inability amounted to insolvency to the point where the corporation is practically defunct). Here, however, Defendant neither established that QTA had rejected the opportunity to purchase the Recoll Note, nor that the QTA was financially insolvent.
In Huffington v. Upchurch, the Texas Supreme Court stated that the fiduciary-defendant bears the burden of establishing a partnership's incapability, particularly where he was the managing partner and responsible for obtaining financing. See532 S.W.2d at 578. The Court reaffirmed its prior holding that "`the burden is upon the defendants to establish the fairness of *Page 7 
the . . . transaction to the corporation, and that plaintiff does not have the burden of establishing that the corporation could or would have [taken advantage of the opportunity] had the defendants not engaged in their competitive sales activities.'" Id.
(quoting International Bankers Life Ins. Co. v. Holloway,368 S.W.2d 567, 571 (Tex. 1963)). For the Court, such a showing was "`no more than evidentiary upon the question of fairness, and upon the question of exemplary damages.'" Id.; see also II Alan R. Bromberg Larry E. Ribstein, OnPartnership § 6.07(d) (2008).
Moreover, the Court finds that A.Teixeira Co. v. Texeira is not dispositive, and Defendant's reliance thereon is simply misplaced. See699 A.2d 1383 (R.I. 1997). There, our Supreme Court held that
 "if a shareholder reasonably believes that the opportunity is one in which the corporation has no interest or does not have either an expectancy in obtaining or the financial ability to obtain, then the shareholder may take it for himself or herself without breaching any fiduciary obligation." Id. at 1388.
Although the Court in Texeira determined that the defendant-shareholder had not breached his duty because there was no evidence in the record to find that the plaintiff-corporation was able to avail itself of the opportunity, there, unlike here, the defendant-shareholder was not a managing officer or director of the corporation, and did not possess financial control of the corporation. Indeed, there, the corporation's inability to take advantage of the opportunity was not a function of the financial decisions under the defendant-shareholder's control. As a result, unlike KP, the shareholder-defendant in Texeira was not subject to the more stringent duties imposed on a managing partner of a limited partnership, and therefore, it was reasonable for the Court to examine whether the corporate opportunity was in fact realistically available to the plaintiff-corporation. *Page 8 
Furthermore, KP's reliance on Lawton v. Nyman is similarly misplaced. See 327 F.3d 30 (1st Cir. 2003). InLawton, the Court found the district court's damages award — based on the difference between the redemption share price and the subsequent value of the corporation's shares when it was sold sixteen months later — inappropriate and remanded for a new determination. Despite KP's assertions, the Court inLawton merely remanded on the question of damages because it found the lower court's decision to stray from the "usual rule" of damages in redemption cases — the difference between the redemption stock price received by plaintiff and the fair market value of the stock at the time of plaintiff's sale — improper, unsupported by the record, and undercut by the Court's own findings and conclusions.Id. at 43-45. Without a showing that plaintiffs would have retained their shares until the corporation was sold, the circuit court held that the district court should not have strayed from the usual rule. Id. By contrast, here, the Court's measure of damages was definite and not a function of time or fluctuating value. The value could be readily ascertained by calculating the difference between the amount paid by PIC to purchase the Recoll Note and the amount paid by QTA to PIC, including interest, to extinguish it.
 B Damages Award
Defendant contends that even if its failure to disclose the details of PIC's acquisition of the Recoll Note was the proximate cause of Plaintiffs' damages, any gain inappropriately realized by KP or PIC belonged to QTA, and therefore, under the terms of the LP Agreement, they were entitled to a 50% share. Indeed, Defendant properly relies on the language of the LP Agreement specifying that income and losses were to be shared by the General Partner and Limited Partners. However, under the circumstances, this language is not controlling. *Page 9 
It is well settled, that a "disloyal fiduciary `is personally liable even where the profits or benefits accrue to a third party, whether or not it is under the control of the [fiduciary].'"[3]Demoulas v. Demoulas Super Markets,677 N.E.2d 158, 188 (Mass. 1997) (quoting Durfee v.Durfee Canning, Inc.,323 Mass. 187, 196-97, 80 N.E.2d 522, 527-28 (1948)). The strict imposition of penalties is expressly designed to discourage disloyalty and ensure that a fiduciary does not profit from his conduct. See Thorpe, 676 A.2d at 445; see alsoMilbank, 13 F.3d at 542-43 (explaining that the underlying purpose of a breach of fiduciary duty action is to remove all incentive to breach and not simply to compensate for damages in the event of a breach").
Moreover, liability for a disloyal fiduciary is generally equitable in nature. See, e.g., Ed Peters JewelryCo. v. CJ Jewelry Co., 51 F. Supp. 2d 81, 99 (D.R.I. 1999) (noting that "[e]quitable remedies are available to a plaintiff who has been wronged by a breach of fiduciary duty."); StandardMachinery Co. v. Duncan Shaw Corp., 208 F.2d 61 (1st Cir. 1953) (explaining that it is fundamental that damages may be assessed in favor of a beneficiary against a defaulting trustee either to compensate the beneficiary for such loss as he may have sustained as a result of the breach of trust, or to prevent the faithless trustee from unjustly enriching himself as a result of his breach of fiduciary duty"). "`The true basis of the governing doctrine rests fundamentally on the unfairness in the particular circumstances of a director, whose relation to the corporation is fiduciary, taking advantage of an opportunity [for his personal profit] when the interests of the corporation justly call for protection.'"Demoulas, 424 Mass. at 529, 677 N.E.2d at 180 (quoting *Page 10 Durfee, 323 Mass. at 199, 80 N.E.2d at 529 (1948)). This type of fiduciary breach "`calls for the application of ethical standards of what is fair and equitable . . . [in] particular set of facts.'"Id.
Therefore, under the circumstances, the Court finds that KP, as the breaching fiduciary, is not entitled to a 50% share of the damages award, despite the language of the LP Agreement. In light of KP's disloyalty, and the deterrent purpose underlying a breach of fiduciary duty claim, the Court finds it was warranted in holding K P liable and ensuring it was neither unjustly enriched nor profited from its own misconduct.
 IV Conclusion
For the foregoing reasons, the Court denies KP's motion for reconsideration and enters the Order filed on even date herewith.
[1] Capitalized terms, unless otherwise defined herein, have the meaning assigned to them in the Court's Decision.
[2] As set forth in this Court's prior Decision, partners owe a fiduciary duty to each other and the partnership under the common law. See Sullivan v. Hoey,102 R.I. 487, 488, 231 A.2d 789, 790 (1967); Lockwood v.Edwards, 46 R.I. 267, 270, 126 A. 757, 758 (R.I. 1924) (stating that the relation between partners is fiduciary in nature). This duty is often compared to that of corporate directors. Boxer v.Husky Oil Co., 429 A.2d 995, 997 (Del. Ch. 1981) (quotingMiller v. Schweickart, 405 F. Supp. 366, 369 (S.D.N.Y 1975) (stating that the fiduciary duty of a general partner to a limited partner is no less than that of corporate directors, requiring good faith, loyalty, and care)). Indeed, a fiduciary's duty of undivided loyalty "applies alike to agents, partners, guardians, executors and administrators, directors and managing officers of corporations, as well as to technical trustees." Pouzzner v. Westerly TheatreOperating Co., 67 F. Supp. 874, 883 (D.R.I. 1946).
[3] As set forth in this Court's prior Decision, KP cannot be held liable for PIC's actions absent fraud, bad-faith or something more than the mere existence of a parent-subsidiary relationship between two corporations. See UST Corp. v General Rd. TruckingCorp., 783 A.2d 931, 940 (R.I. 2001) (citing Miller v. DixonIndus. Corp., 513 A.2d 597, 604 (R.I. 1986). However, the Court reaffirms its prior holding that KP is liable for its own separate breaches of the duty of loyalty in connection with PIC's purchase of the Recoll Note.
ORDER
This matter came on for hearing before this Honerable Court on the Business Calendar, Mr. Justice Silverstein presiding, on January 21, 2011, on Kelly Picerne's Motion for Reconsideration and Clarification of the Court's Decision. Following a hearing thereon, and upon consideration of the parties' briefs, written materials, and arguments, for the reasons set forth in this Court's written Decisions dated December 6, 2010 and January 28, 2011, it is hereby
ORDERED, ADJUDGED AND DECREED:
1. Kelly Picerne's Motion for Reconsideration and Clarification of the Court's Decision is DENIED.
2. Defendant shall pay over to Plaintiffs the difference between the price paid by PIC for the Recoll Note and the amount paid by QTA to PIC to extinguish it, including interest attributable therto, to wit $903, 101.
3. Defendant shall render a full accounting to the Court with respect to all partnership distributions — including distributions of "Available Net Income" for the years 1994 through 2004, inclusive — that should have been made in accordance with the LP Agreement.
4. Defendant shall render a full accounting to the Court as to the disposition of QTA's pickup truck.
5. Defendant shall render a full accounting to the Court as to the reserve account.
6. As to Paragraph 3 through 5 above, Defendant shall render its accounting to this Court (and to the Plaintiffs) on or before February 11, 2011.
7. Following submission and review of the accounting, the parties shall advise the Court as to whether further proceedings are required or as to whether final judgment should enter herein.
ENTER: PER ORDER: ____________________________ __________________________ Michael A. Silverstein Dep. Clerk Associate Justice
DATED: 1/28/2011 *Page 1