**KEYSTONE ELEVATOR COMPANY, INC.**

v.

**JOHNSON & WALES UNIVERSITY et al.**

No. 2002–501–Appeal.

Supreme Court of Rhode Island.

April 15, 2004.

Patrick Tarmey, Providence, for Plaintiff.

David Campbell, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, FLAHERTY, and SUTTELL, JJ.

## OPINION

SUTTELL, Justice.

The defendants, Johnson & Wales University (University) and Agostini Construction Company, Inc. (Agostini) (collectively, defendants), appeal from the Superior Court's award of $12,383 in attorneys' fees to the plaintiff, Keystone Elevator Company, Inc. (Keystone), as the prevailing party in its mechanics' lien petition. The plaintiff was awarded $11,705 in the underlying action.[1]

The defendants raise four issues on appeal: (1) whether the procedural means Keystone utilized to request attorneys' fees were sufficient; (2) whether Keystone qualifies as the "prevailing party" for purposes of attorneys' fees; (3) whether the amount of legal fees was excessive in light of the final award; and (4) whether the mechanics' lien statute requires the filing of a notice of *lis pendens* when no litiga-

tion is pending affecting the title to real property. As we resolve those issues in favor of plaintiff, we affirm the award of attorneys' fees.

### Facts and Procedural History

Agostini was the general contractor in a project to construct a new dormitory at the University. On or about January 6, 1999, Keystone and Agostini entered into a subcontract agreement to install elevators in the building under construction. Agostini agreed to pay $221,200 to Keystone on condition that the work be completed no later than August 1, 1999. On January 25, 2000, Agostini filed a complaint against Keystone, alleging that Keystone failed to comply with its obligations pursuant to the subcontract agreement. Keystone alleged that it was unable to complete the work by the contract date because Agostini did not timely fulfill its obligations to complete the shaftways and machine room and to supply Keystone with adequate electrical power at the site. Agostini asserted that Keystone's work was substandard, in addition to being untimely.

On February 11, 2000, Keystone filed a petition to enforce a mechanics' lien and complaint alleging that it was owed $45,089.25, plus interest, costs, and attorneys' fees for material and labor furnished to Agostini for construction of two elevators. On June 12, 2001, defendants filed a motion to dismiss the mechanics' lien petition, alleging that Keystone failed to perfect the mechanics' lien pursuant to G.L. 1956 § 34–28–10 because it had not recorded a *lis pendens*. That motion was denied in an order issued on August 31, 2001, wherein the motion justice determined that no *lis pendens* was required because defendants had posted a bond pursuant to § 34–28–17. On September 12, 2001, the motion justice issued an order consolidat-

---

1. The defendants do not challenge that under- lying award on appeal.

ing the complaint and mechanics' lien petition.

In October, the matter was heard before a second justice in a nonjury trial, at the beginning of which defendants renewed their motion to dismiss the petition for failure to perfect the mechanics' lien. At the close of the evidence, the trial justice reserved judgment and directed the parties to submit post-trial memoranda in lieu of closing arguments. On January 17, 2002, she filed the court's decision in which she denied the motion to dismiss and ruled in favor of Keystone as the "prevailing party." The court concluded that Keystone was entitled to $33,455 for overtime work and two change orders, less a setoff of $13,750 for a payment that Agostini had made to Keystone's supplier, and an $8,000 credit for a payment that Agostini previously had made to Keystone. Thus, the trial justice ordered defendants to pay plaintiff $11,075, plus interest. She also awarded Keystone attorneys' fees of $12,383.

On January 24, 2002, defendants filed a motion for reconsideration of the attorneys' fees awarded to Keystone, as well as their own motion for attorneys' fees pursuant to § 34–28–19. Keystone objected and sought additional attorneys' fees incurred in objecting to defendants' motion to reconsider. After hearing, the court filed a written decision on April 12, 2002, in which it denied both defendants' motion and Keystone's supplemental request for attorneys' fees. A judgment was entered on April 16, 2002, and defendants timely appealed.

The defendants assert five specifications of error to support their appeal: (1) that Keystone is not the "prevailing party" within the meaning of § 34–28–19; (2) that the trial justice abused her discretion by failing to set off Agostini's successful defense in computing the lien award and determining the "prevailing party"; (3)

that the trial justice failed to consider the settlement positions of the parties in determining the "prevailing party"; (4) that the award was excessive; and (5) that the trial justice erred by denying Agostini's motion to dismiss for Keystone's failure to file a *lis pendens* pursuant to § 34–28–10. The defendants argue, moreover, that the procedure employed by the trial justice in considering Keystone's request for attorneys' fees was unfair and prejudicial, and denied them a meaningful opportunity to oppose the request.

## Standard of Review

■ Recognizing that the Rhode Island Rules of Civil Procedure—like the Federal Rules of Civil Procedure—do not provide for a motion to reconsider, the trial justice noted that this Court has applied a liberal interpretation of the rules to "look to substance, not labels." *See Sarni v. Meloccaro*, 113 R.I. 630, 636, 324 A.2d 648, 651–52 (1974). Thus, she construed the motion to reconsider as a motion to vacate under Rule 60(b) of the Superior Court Rules of Civil Procedure. A Rule 60(b) motion to vacate is addressed to the trial justice's sound judicial discretion and " 'will not be disturbed on appeal, absent a showing of abuse of discretion.' " *Crystal Restaurant Management Corp. v. Calcagni*, 732 A.2d 706, 710 (R.I.1999).

## The Procedural Means to Request Attorneys' Fees

■ The defendants argue that they were blindsided by the procedural means Keystone used to request attorneys' fees. In lieu of closing arguments, the trial justice requested counsel to submit memoranda within ten days. Along with its memorandum, Keystone submitted to the court an attorney's affidavit supporting the reasonableness of its fees. The defendants submitted their joint memorandum on the

same day; no objection to the fee request was included. Thus, they maintain, they were not given an opportunity to cross-examine the attorney or adequately oppose the request before the trial justice issued her written decision.

Keystone asserts that it was not required to file a separate motion for attorneys' fees because the original petition included a demand for costs and attorneys' fees. Additionally, Keystone had objected to the initial bond amount because it did not include monies for attorneys' fees and costs. The amount of the bond was increased thereafter to cover attorneys' fees and costs. Keystone further argues that defendants had ample opportunity to object to the request for fees, but chose not to do so, and were, in fact, afforded a hearing on their motion to reconsider.

We conclude that defendants were on sufficient notice that the issue of attorneys' fees was being considered by the trial justice and that they indeed had occasion to object. We first observe that Keystone filed its post-trial memorandum, which included the affidavit, on October 15, 2001, a full three months before the trial justice issued her written decision. Secondly, the trial justice did have an opportunity to consider defendants' objections on their motion to reconsider. She ruled, however, that defendants "have explained neither the alleged injustice resulting from the January 17, 2002 Decision nor the extraordinary circumstances necessary to justify relief."

■ The better practice for requesting attorneys' fees under the mechanics' lien

statute is to submit a motion therefor after the underlying issues have been determined. However, in this case we are confident that, were we to remand the case on this issue, the outcome would be the same. Because we discern no abuse of discretion by the trial justice, we affirm the denial of defendants' motion to reconsider.

### Prevailing Party

■ Section 34–28–19 [2] permits the trial court, in its discretion, to award attorney's fees to the prevailing party in a mechanics' lien action. Here, the trial justice held that Keystone was the prevailing party in the underlying action because its "Petition to Enforce was granted for more than $34,000 on its initial claim of $45,000." On appeal, defendants argue that the trial court "abused its discretion by failing to give the term 'prevailing party' its plain and ordinary meaning."

The defendants assert that Keystone does not qualify as the "prevailing party" because after setoffs and credits are factored into the calculation, its award was only $11,705, little more than 25 percent of its initial claim. The defendants contend that since they were successful on nearly 75 percent of their defense, they are the prevailing party and deserve an award of attorneys' fees. They maintain that "setoffs, credits, and settlement offers must be considered in [the] determination of the prevailing party," and that "it is inequitable to find that a party 'prevails' and award legal fees when the party recovers an insignificant portion of its claim." The defendants contend that to qualify as a prevailing party, "at least 51% of the claim" must be awarded. [3]

---

2. General Laws 1956 § 34–28–19 provides: "The costs of the proceedings shall in every instance be within the discretion of the court as between any of the parties. Costs shall include legal interest, cost of advertising, and all other reasonable expenses of proceeding with the enforcement of the ac-

tion. *The court, in its discretion, may also allow for the award of attorneys' fees to the prevailing party.*" (Emphasis added.)

3. For this proposition, Agostini cites no authority save an unreported Superior Court decision.

Defining the term "prevailing party" in the context of the mechanics' lien statute is a matter of first impression in this jurisdiction. This Court reviews questions of statutory interpretation *de novo. State v. Fritz,* 801 A.2d 679, 682 (R.I.2002) (citing *Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates,* 763 A.2d 1005, 1007 (R.I.2001)). "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *State v. DiCicco,* 707 A.2d 251, 253 (R.I.1998) (quoting *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1226 (R.I.1996)). "Moreover, when we examine an unambiguous statute, 'there is no room for statutory construction and we must apply the statute as written.'" *Id.* (quoting *In re Denisewich,* 643 A.2d 1194, 1197 (R.I.1994)).

We first note that Black's Law Dictionary defines "prevailing party" as the "party in whose favor a judgment is rendered, regardless of the amount of damages awarded." Black's Law Dictionary 1145 (7th ed. 1999).

The United States Supreme Court has defined "prevailing party" for the purpose of federal fee-shifting statutes. In *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), a case brought pursuant to federal civil rights statutes, the Court held that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* at 433, 103 S.Ct. 1933 (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)). The Court has held that "even an award of nominal damages suffices under this test." *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources,* 532 U.S. 598, 604, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (citing *Farrar v. Hobby,* 506 U.S. 103, 105, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)).

As defendants aptly point out, this case involves a "private contract dispute between contractors over money." It does not implicate "an abstract constitutional entitlement or the vindication of a public right for the public good." Consequently, they implore us to adopt a quantitative analysis in determining the "prevailing party."

Under such an analysis, they assert, Keystone received at best only 25 percent of its claim. This figure is reduced to a mere 15 percent, if the court factored the defendants' settlement offer into the equation. Keystone challenges defendants' calculations, saying that it was, in fact, awarded 80 percent of its total claim, which then was reduced by one setoff and one credit, "a mere fraction of the total setoffs and counterclaims asserted by [defendants]." Keystone further asserts that not only is a mathematical formula difficult to implement when there are numerous competing claims, it also "invites abusive tactics by unsavory litigants."

The parties refer us to case law in several other jurisdictions to support their respective positions. Although such a comparison is somewhat problematic given the unique nature of each state's mechanics' lien statutory scheme, we are persuaded that the Supreme Court of Florida has endorsed an appropriate standard for mechanics' lien actions: "the fairest test to determine who is the prevailing party is to allow the trial judge to determine from the record which party has in fact prevailed on the significant issues tried before the court." *Prosperi v. Code, Inc.,* 626 So.2d 1360, 1363 (Fla.1993).

■ Such a standard places the determination of which party is the "prevailing party" precisely where it ought to be, within the sound discretion of the trial justice. Clearly a trial justice is in the best position to assess the merit of each party's claims or defenses, and to determine which party fairly may be said to have prevailed on the significant issues. We reject the notion that winning or losing, in the context of a mechanics' lien action, always is susceptible to mathematical precision.

In the case before us, the trial justice engaged in a thorough and thoughtful analysis of the evidence before the court. She identified and addressed four separate issues. The first—whether there was an enforceable contract between the parties— was not disputed. The second issue was whether there was an enforceable modification to the contract. She considered four documents, or exchanges, that could be characterized as modifications, the most important of which purported to limit overtime expenses to $8,000. The trial justice ruled that "Keystone satisfied its burden of demonstrating Agostini's subjective and objective intents to be bound to the new terms," and that "any testimony that Agostini provided to the contrary is not credible." She further found that Agostini "failed to prove the existence of an oral modification creating an $8,000 limit on overtime expenses." She also rejected Agostini's claim that the original contract completion date had not been extended. Accordingly, she awarded Keystone $31,247.50 for overtime work.

With respect to various change orders, the trial justice found that both parties were "piling-on." She accepted some, rejected others, ultimately awarding Keystone $2,207.50.

The third issue was whether Agostini had waived its right under the contract to demand that Keystone provide releases from its suppliers. She found that Agostini "provided no evidence that it demanded these releases until after the start of the litigation," and thus had waived its right to enforce the provision.

The fourth issue was whether Agostini was entitled to a credit of $13,750. The trial justice discounted Keystone's arguments in this regard, and allowed Agostini the setoff under the doctrine of unjust enrichment.

After disposing of these issues and determining that Keystone had been "substantially successful" and was the "prevailing party," the trial justice considered its request for attorneys' fees in light of § 34–28–19 and Article V, Rule 1.5 of the Supreme Court Rules of Professional Conduct. We are well satisfied that the award of such fees in the amount of $12,383 was an appropriate exercise of the trial justice's discretion. Finally, she awarded Keystone prejudgment interest from September 8, 1999, pursuant to G.L.1956 § 9–21–10.

### Should Setoffs and Settlement Offers be Considered in Determining Prevailing Party Status?

■ The defendants further argue that the trial justice abused her discretion and erred by failing to deduct the setoff of $13,750 and the credit of $8,000 from the overall lien award in determining "prevailing party" status, and by failing to consider the settlement position of the parties.

■ "A setoff * * * becomes part of a single controversy between the parties, requiring only one verdict and one judgment according to the facts. Generally, if an established setoff or counterclaim is less than the plaintiff's demand, the plaintiff has judgment for the residue only." 20 Am. Jur. 2d Counterclaim, Recoupment, & Setoff § 88 at 294 (1995).

Where "setoffs asserted in mechanics' lien actions are closely related to the underlying controversy, the controversy is, in actuality, one controversy with one judgment and one verdict." *Brasington Tile Co. v. Worley,* 327 S.C. 280, 491 S.E.2d 244, 248 (1997). Setoffs directly affect the amount a defendant actually owes and, as part of the single verdict rendered by the trial court, should be considered in determining the prevailing party. *See Parodi v. Budetti,* 115 Nev. 236, 984 P.2d 172, 175 (1999) (per curiam); *Ennis v. Ring,* 56 Wash.2d 465, 353 P.2d 950, 954 (1959). Nonetheless, we conclude that even though the claimant obtains a net judgment, "it need not always control the determination of who should be considered the prevailing party." *Prosperi,* 626 So.2d at 1363.

Agostini's successful argument for a setoff on the amount owed to Keystone is not enough to invest it with prevailing party status. As noted previously, determining the prevailing party entails more than a mere mathematical calculation. Moreover, it is clear in this case that the trial justice considered both the setoff and credit in concluding that Keystone was the prevailing party.

■ The defendants cite both South Carolina and Florida authorities in their argument that settlement offers should be considered when determining the prevailing party. The Rhode Island mechanics' lien statute is distinct from the South Carolina statute, however, because the South Carolina statute expressly enumerates the impact of settlement negotiations on determining prevailing party status for purposes of awarding attorneys' fees. *See* S.C.Code Ann. § 29–5–10 (Law. Co-op 1990). The Florida Supreme Court has held that to qualify as a prevailing party entitled to attorneys' fees in a mechanics' lien action, the party "must have recovered an amount exceeding that which was earli-er offered in settlement of the claim." *C.U. Associates, Inc. v. R.B. Grove, Inc.,* 472 So.2d 1177, 1179 (Fla.1985). Though the Florida statute does not require consideration of settlement offers, the court interpreted legislative intent to add this requirement. *Id.* at 1178. We see no basis, however, for attributing a similar intent to our Legislature on this issue, and decline to do so. Moreover, even if defendants' settlement offer of $6,000 is considered, Keystone obtained a net judgment. Although defendants say that they were prepared to offer up to $10,000, the only amount proffered was $6,000.

## Was the Amount of Attorneys' Fees Excessive?

■ The defendants assert that the award of attorneys' fees of $12,383 is excessive, given the amount of the award and the degree of Keystone's success. The defendants do not contest the rate charged by Keystone's counsel, nor the number of hours billed. Instead, they are contesting the amount of the attorneys' fees compared with the amount of the award. The defendants argue that an attorneys' fees award of $12,383—when the award is only $11,075—is unreasonable and constitutes an abuse of the trial court's discretion.

■ It is well within the authority of the trial justice to make an attorneys' fees award determination after considering the circumstances of the case. *Schroff, Inc. v. Taylor–Peterson,* 732 A.2d 719, 721 (R.I.1999) (per curiam). The trial justice is in the unique position of observing the attorneys requesting the fees and is better able to judge the merits of a particular request. This trial justice observed first-hand the work product of counsel throughout the trial and thus was better situated to assess the course of litigation and the quality of counsel.

■ An award of attorneys' fees pursuant to § 34–28–19 rests within the discretion of the trial judge. It is well settled that on review, "[t]he decision of the trial court made in the exercise of a discretionary power should not be disturbed unless it clearly appears that such discretion has been improperly exercised or that there has been an abuse thereof." *Frank N. Gustafson & Sons, Inc. v. Walek*, 599 A.2d 730, 733 (R.I.1991) (quoting *Matracia v. Matracia*, 119 R.I. 431, 438, 378 A.2d 1388, 1391 (1977)).

■ A trial justice determines the reasonableness of the fee by considering the factors enumerated in Rule 1.5. *See Colonial Plumbing & Heating Supply Co. v. Contemporary Construction Co.*, 464 A.2d 741, 743 (R.I.1983). These factors include the following: the time and labor required; the novelty and difficulty of the questions involved; the skill requisite to perform the legal service properly; the amount involved and the results obtained; and the time limitations imposed by the client or by the circumstances.

Here, Keystone submitted an affidavit from an attorney supporting the reasonableness of the fees. The defendants argue that the affidavit was deficient because it was submitted before the trial justice made her decision and thus did not consider the result of the trial as required by Rule 1.5. We note, however, that the trial justice was clearly aware of the result of the trial when she awarded the fees. The trial justice noted that Keystone's counsel was "substantially successful in pursuing this collection matter for his client."

We find no abuse of discretion by the trial court justice and accordingly affirm the award of attorneys' fees.

## Does the Mechanics' Lien Statute[4] Require the Filing of a Notice of *Lis Pendens* when no Litigation is Pending Affecting the Title to Real Property?

■ On December 10, 1999, Keystone filed a notice of intention in the land evidence records relative to property owned by the University and located at 32 Page Street in Providence, Rhode Island. On January 7, 2000, the University filed a petition to discharge the lien pursuant to § 34–28–17, whereby a bond would replace the real property as security on the claim. The petition was granted by the trial justice, and on January 11, 2000, a bond releasing the lien against the real property was issued. On June 12, 2001, defendants filed a motion to dismiss Keystone's lien claim for failure to file a *lis pendens* as required by § 34–28–10. The motion was denied after hearing on August 28, 2001. The defendants renewed the motion at the start of trial, and the trial justice denied the motion in her decision dated January 17, 2002.

The defendants contend that the trial justice erred by denying their motion to dismiss the lien claim. The defendants maintain that Keystone's failure to file the *lis pendens* was fatal to its mechanics' lien claim, and therefore, an attorneys' fee award pursuant to the mechanics' lien statute is not available. Section 34–28–10(a) provides in part:

"The lien of any person * * * who fails to file a petition and notice of *lis pendens* * * * shall be void and wholly lost as to work done or materials furnished * * *." (Emphasis added.)

Keystone admits that it did not file a notice of *lis pendens*. Keystone asserts

---

4. The procedural requirements of the mechanics' lien statute have been chronicled in previously reported decisions. *See, e.g., Frank N. Gustafson & Sons, Inc. v. Walek*, 599 A.2d 730, 731 (R.I.1991).

that the filing is unnecessary and is prohibited by applicable law because the notice of intention filed against the real property was discharged by the posting of a bond pursuant to § 34–28–17. Section 34–28–17 provides for the discharge of the notice of intention and dismissal of the petition as to the property owner upon proof of payment or deposit of a bond in the registry of court.[5]

Keystone maintains that when the University's petition to discharge the mechanics' lien was granted, and the bond was substituted as the security, the notice of intention that Keystone filed against the real property was discharged pursuant to § 34–28–17. Keystone contends that after the bond was issued, it no longer had any right to file a *lis pendens* against the real property because it no longer had a claim against the real property. Any claim now would have to proceed against the bond pursuant to § 34–28–17.

The defendants argue that the lien at issue was void and wholly lost because Keystone failed to file the statutorily required notice of *lis pendens*. They note that there is no statutory language abrogating the *lis pendens* requirement of § 34–28–10 in circumstances where a bond is posted pursuant to § 34–28–17. We agree with defendants that a literal reading of the statute would require the recording of a notice of *lis pendens*. However, we also agree with the trial justice that in this situation, this requirement defies common sense.

The defendants cite recent Supreme Court precedent for the proposition that "those seeking to attach a lien must comply strictly with the mandatory directives of the statute." *See Pezzuco Construction, Inc. v. Melrose Associates, L.P.,* 764 A.2d 174, 177 (R.I.2001) (per curiam). We note, however, that this case differs substantially from *Pezzuco*. In *Pezzuco*, the Court dismissed a mechanics' lien petition because the notice of *lis pendens* was filed three days after the statutorily prescribed 120 days had expired. The Court said that "[w]hether or not a party is prejudiced by the late filing is irrelevant under the statute." *Id. Pezzuco* is factually distinguishable from this case because no bond was involved. In this case, the bond effectively

---

**5.** Section 34–28–17 provides in part:

"At any time after the recording of a notice of intention or after the filing of a petition to enforce a lien under §§ 34–28–10 and 34–28–13, the owner or lessee or tenant of the land described in the notice or petition may pay into the registry of the court in the county in which the land is located cash equal to the total amount of the notice of intention and the accounts and demands of all persons claiming liens therein under § 34–28–1, 34–28–2, 34–28–3 or 34–28–7, including costs of the lien holder, or may, in lieu of cash, deposit in the registry of the court the bond of a surety company licensed to do business in this state in the total amount running to all persons claiming liens under §§ 34–28–10 and 34–28–13, and *on proper proof of payment or deposit and on motion of the owner or lessee or tenant, any justice of the superior court shall enter ex parte an order discharging the*

*notice of intention and lis pendens* and dismissing the cause as to the owner or lessee or tenant and as to all persons having any title, claim, lease, mortgage, attachment or other lien or encumbrance (other than under § 34–28–1, 34–28–2, 34–28–3 or 34–28–7), and on the entry of the order, the building, canal, turnpike, railroad or other improvement and the land on which the improvement is being or has been constructed, erected, altered, or repaired shall be released and discharged from the notices of intentions and accounts and demands, but the rights of all persons having any title, claim, lease, mortgage, attachment or other lien or encumbrance (other than under § 34–28–1, 34–28–2, .34–28–3 or 34–28–7) shall be the same as if no notices of intention under § 34–28–4 had been mailed or filed and as if no petition under §§ 34–28–10 and 34–28–13 had been filed." (Emphasis added.)

eliminated the notice of intention that was filed against the property. Although we agree that strict compliance with the terms of the statute is mandatory, we cannot interpret a statute to require an "absurd result."

■ In interpreting a statute, we must "determine and effectuate the Legislature's intent and [ ] attribute to the enactment the meaning most consistent with its policies or obvious purposes." *State v. Burke*, 811 A.2d 1158, 1167 (R.I.2002) (quoting *Oliveira v. Lombardi*, 794 A.2d 453, 457 (R.I.2002)). In doing so, it is firmly established that we "will not construe a statute to reach an absurd result." *Id.* (quoting *Town of North Kingstown v. Albert*, 767 A.2d 659, 662 (R.I.2001)).

The judge must exercise discretion with a scrupulous regard for the rights of the parties, and he or she must strike a balance between strict construction of the statute on the one hand, and the carrying out of the legislative purpose of affording a liberal remedy to all who have contributed labor and materials toward adding to the value of the property. *Walek*, 599 A.2d at 733.

It is axiomatic that the University filed the bond petition to remove the lien from its property. Yet, defendants now insist that a *lis pendens* also must be filed against the property, even though Keystone no longer has any claim to the property. The bond stands as security for any claim made by Keystone; the real property is no longer at risk or encumbered in any way.

■ The literal reading of the mechanics' lien statute, as it refers to the *lis pendens* issue, would lead to an absurd result.

"A notice of *lis pendens* is filed on the public record for the purpose of warning all interested persons that the title to

the subject property is being disputed in litigation and that, therefore, any person who subsequently acquires an interest in the property does so subject to the risk of being bound by an adverse judgment in the pending case." *Montecalvo v. Mandarelli*, 682 A.2d 918, 924 (R.I.1996) (citing Black's Law Dictionary 932 (6th ed. 1990)). (Emphasis added.)

■ Additionally, Keystone argues that filing a *lis pendens* when it has no claim to the real property may expose it to charges of slander of title. Slander of title occurs when a party maliciously makes false statements about another party's ownership of real property, which then results in the owner suffering a pecuniary loss. *DeLeo v. Anthony A. Nunes, Inc.*, 546 A.2d 1344, 1346 (R.I.1988) (citing *Hopkins v. Drowne*, 21 R.I. 20, 23, 41 A. 567, 568 (1898)). This Court has held that malice, for purposes of slander of title, may be inferred when a party files a notice of *lis pendens* absent a good-faith belief in his claim to title of the property. *Id.* at 1347–48. Clearly, Keystone could have no good-faith belief in its claim to title of the real property once the bond was issued.

For the reasons stated herein, we affirm the trial justice's denial of the defendants' motion to dismiss the lien claim for Keystone's failure to file a notice of *lis pendens*.

## Conclusion

We conclude that the trial justice did not abuse her discretion in awarding attorneys' fees to Keystone pursuant to § 34–28–19. Furthermore, we conclude that the trial justice correctly denied the motion to reconsider/vacate because she found that the defendants failed to allege the extraordinary circumstances required to justify relief. We affirm the judgment of the

Superior Court. The record shall be remanded to the Superior Court.

Justice GOLDBERG did not participate.