DECISION
Before the Court are cross-motions to assess attorney fees and costs in PC-1998-5400. The Supreme Court, in Cady v. IMCMortgage Co., 862 A.2d 202 (R.I. 2004), ordered the record remanded to Superior Court, in part, to determine attorney's fees, costs, and post-judgment interest. See Cady,862 A.2d at 224. This Court's assessment will be confined to the contractual terms of the employment agreement (hereinafter "Agreement"), effective November 3, 1997, among Wayne Cady (hereinafter "plaintiff"), IMC Mortgage Company ("IMC") and RMC Holdings, Inc. ("RMC") (hereinafter collectively "corporate defendants").[1] Harry Struck (hereinafter "Struck") was named as an individual defendant in this action, as he was not a party to the Agreement but acted in his capacity as President and Chief Executive Officer of RMC Holdings, Inc. After the submission of post-hearing memoranda, the parties made several attempts to settle these issues; however, such efforts were unavailing. Accordingly, these issues are ripe for decision by this Court and will be decided herein.
 FACTS AND TRAVEL
Following a jury trial in March and April of 2001, wherein ten counts were presented to the jury — including one breach of contract claim against the corporate defendants, and nine counts against all defendants[2] — the following verdicts were returned:
 "[O]n plaintiff's breach of contract claim against corporate defendants, the jury found for plaintiff and awarded him $268,528. On the interference of a contract claims, the jury found corporate defendants had not interfered with plaintiff's contract, but that Struck had interfered. However, no damages were assessed against Struck on that count. On the claims that defendants violated the federal wiretapping statute, the jury found corporate defendants had violated the statute, but awarded no damages. The jury found Struck had also violated the statute, and awarded plaintiff $50,000 in damages. On the invasion of privacy claims, the jury found corporate defendants had not invaded plaintiff's privacy, but that Struck had. The jury awarded plaintiff $25,000 in damages on the invasion of privacy claim. On the claim that defendants violated a criminal statute pursuant to § 9-1-2, the jury found all defendants in violation of the statute, but only awarded damages of $10,000 on the claim against Struck. The jury found in favor of defendants on the defamation and intentional infliction of emotional distress claims. Finally, the jury saw fit to award Cady $100,000 in punitive damages against corporate defendants and an additional $100,000 in punitive damages against Struck." Cady, 862 A.2d at 210.[3]
On appeal, the Supreme Court concluded that the trial justice only erred in instructing the jury on the doctrine of commercial frustration, and ordered the record remanded to Superior Court with an instruction to amend the judgment for the plaintiff against the corporate defendants in the amount of $686,342, which included pre-judgment interest, and to determine attorney's fees, costs, and post-judgment interest. See Cady, 862 A.2d at 224.
The primary issue in contention, which is addressed in the parties' post-hearing memoranda, is whether the plaintiff's claims are interrelated, as between Struck and the corporate defendants, so as to permit allocation of fees for all services rendered by Attorneys Dodd and Michaelson (hereinafter "plaintiff's counsel"), to each defendant.[4] The plaintiff's position is that all named defendants should be joint and severally liable for this Court's assessment of the reasonable attorney fees to be awarded. However, all defendants are in agreement that the claims against Struck are not intertwined with the claims against the corporate defendants, and thus, this Court must apportion liability for such fees to each defendant. Furthermore, for reasons discussed herein, all named defendants argue that this Court should reduce the amount of fees requested by plaintiff's counsel by either an across the board reduction[5] or on a claim by claim basis.[6] No arguments have been presented to this Court in opposition to the $200-$225 hourly rate requested by plaintiff's counsel nor have questions been raised regarding the total number of hours billed by said counsel.
The corporate defendants motioned the Court for attorney fees resulting from a denial of plaintiff's motion for preliminary injunctive relief heard in Superior Court on February 17, 1995.[7] The plaintiff presented his motion in an attempt to prevent the corporate defendants from enforcing the non-compete provision of the Agreement. Justice Silverstein denied the motion without prejudice. The corporate defendants argue they are entitled to attorney fees as the "prevailing party" of the petition, whereas the plaintiff contends that the denial of the preliminary injunction was not a legal action entitling the corporate defendants to attorney fees.
In accordance with the Supreme Court's instructions on remand, this Court will decide these issues herein.
 STANDARD OF REVIEW
It is well-settled in Rhode Island that attorney fees "may not be appropriately awarded" to a prevailing party absent statutory or contractual authority. Kells v. Town of Lincoln,874 A.2d 204 (R.I. 2005) (quoting Ins. Co. of N. Amer. v. Kayser-RothCorp., 770 A.2d 403, 419 (R.I. 2001)); see also CapitalProps., Inc. v. City of Providence, 843 A.2d 456, 459 (R.I. 2004) (citations omitted). The United States Supreme Court reaffirmed the so-called "American Rule" in Alyeska PipelineServ. Co. v. Wilderness Society, 421 U.S. 240 (1975), stating "that each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary." See Hensley v. Eckerhart, 461 U.S. 424, 429
(1983). If attorney fees are determined to be permissible, then the Court must look to the reasonableness of said fee in accordance with the Rhode Island Rules of Professional Conduct found in Article V, Rule 1.5 of the Rhode Island Supreme Court Rules.[8]
 ANALYSIS
I. Attorney Fees
A. Prevailing Party Status
Before this Court, it is undisputed that the Agreement entered into between plaintiff and the corporate defendants authorizes an award of attorney fees to a prevailing party "[i]n connection with any legal action to enforce the terms of this Agreement. . . ." (Emphasis added.) Defendant Struck argues that he was not a party to the Agreement, and that the claims against him are not intertwined with the claims against the corporate defendants. Therefore, he is only liable for attorney fees associated with the statutory claims upon which the plaintiff prevailed and which specifically authorize an award of attorney fees.[9] Therefore, a determination must first be made regarding the plaintiff's prevailing party status in the underlying action.
The Rhode Island Supreme Court, in Keystone Elevator Co. v.Johnson Wales University, 850 A.2d 912, 918 (R.I. 2004), noted that "prevailing party" is defined in Black's Law Dictionary as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded." Black's Law Dictionary 1154 (8th ed. 2004).[10] The United States Supreme Court, inHensley v. Eckerhart, 461 U.S. 424 (1983)[11] held, with regard to federal fee-shifting statutes, that "plaintiffs may be considered `prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Id. at 433. A plaintiff need not achieve a total victory in order to be deemed a "prevailing party," rather, "[a]ll that is required is success on a significant issue that achieves an appreciable measure of the relief sought." Pontarelli v. Stone,781 F. Supp. 114, 119-20 (D.R.I. 1992) (quoting Nadeau v.Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)). "Thus, when a plaintiff asserts multiple claims but does not succeed on all of them, the relevant inquiry in determining whether the plaintiff `prevailed' is whether the claims successfully asserted accomplished a significant purpose." Id. at 120.
Our Supreme Court further discussed this issue in KeystoneElevator Co., wherein the Court held that it is well within the authority of the trial justice — who is in the unique position of observing the attorneys requesting the fees, is better able to judge the merits of a particular request, and "observed firsthand the work product of counsel throughout the trial and thus was better situated to assess the course of litigation and the quality of counsel" — to make an attorney fee award determination to a prevailing party after considering the circumstances of that particular case. Keystone Elevator Co., 850 A.2d at 920.
In light of the relevant case law, and this Court's familiarity with the intricacies of this trial, the corporate defendants' argument must fail for its essentially ignores the plaintiff's success in its entirety. While a judgment awarding monetary damages is one measure of success, obtaining a favorable judgment which declares that one's rights have been violated under the existing laws, is another way of measuring success.[12]
This Court acknowledges the impact that the wrongful termination and subsequent trial had on Mr. Cady's professional career, and this Court will not adopt the corporate defendants' position that the plaintiff was "unsuccessful" because he did not obtain monetary judgments on all claims asserted. What this argument fails to recognize is that the plaintiff has achieved a purpose, and there has been an acknowledgement of the defendants' violations of the law.
The Court in Pontarelli, supra stated that when a plaintiff asserts multiple claims but does not succeed on all of them, the relevant inquiry in determining whether the plaintiff "prevailed" is whether the claims successfully asserted accomplished a significant purpose. Pontarelli, 781 F. Supp. at 120. This Court finds that the plaintiff's claims were successfully asserted and as a result, favorable jury verdicts — regardless of the award of monetary damages — were rendered in his favor. Accordingly, the plaintiff accomplished a significant purpose and is deemed a "prevailing party" in this matter.
B. Reasonableness of an Attorney Fee
After attaining prevailing party status, said party must carry the burden of establishing that the amounts sought are "reasonable." Hensley, 461 U.S. at 433-34. The Supreme Court stated that the starting point or "lodestar" for determining the reasonableness of a fee is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Id. Therefore, a fee application must be accompanied by documentation that is "sufficient to satisfy the court, or indeed a client, that the hours expended were actual, nonduplicative and reasonable, . . . and to apprise the court of the nature of the activity and the claims on which the hours were spent."Pontarelli, 781 F. Supp. at 120 (citations omitted).
Since the skill and experience of lawyers varies, and cases may be overstaffed, it is crucial for counsel for the prevailing party to make a "good-faith effort" to exclude from fee requests hours that are excessive, redundant or otherwise unnecessary. Hensley, 461 U.S. at 434. In its inquiry in Hensley, the Supreme Court asked two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" Id. In many cases, a plaintiff's claims will involve a common core of facts or will be based on related legal theories, and counsel's time will be devoted to the litigation as a whole, thus making it difficult to divide hours expended on a claim-by-claim basis. However, in a "mixed success" case, the hours spent on unsuccessful claims must be excluded if they are "separate and distinct" from the successful claims, and the fee awarded should be limited to that which is reasonable in relation to the results received. Id. at 434-35. (Emphasis added.)
The plaintiff argues that the facts and circumstances of this case are interrelated and that in order to prove that Cady's termination was in fact "without cause" and in breach of the Agreement, plaintiff's counsel utilized a core set of facts, which relate to the entire plot concocted by defendant Struck, to support each claim asserted by the plaintiff.[13] The plaintiff further argues and this Court finds that the likelihood of his success on the breach of contract claim presented to the jury would have been lower had he failed to establish the motive and deceptive schemes surrounding his employment situation, specifically the wiretapping and poor performance evaluations. Cady also persuades this Court that corporate defendants' contention that hiring two attorneys was unreasonable and essentially provided duplicative services for the most part lacks merit. While both attorneys collaborated on specific issues and attended certain proceedings, each was assigned a primary task and worked independently, which counsel provided is well documented in their time records. Plaintiff's counsel viewed the matter, in its entirety, as involving a complex issue for non-participants in the industry; requiring extensive preparations, particularly with regard to Mr. Tafuno's deposition. Id. at 2. The plaintiff also contends that the corporate defendants failed to make specific objections to the fee requests, but rather generalized that such were unreasonable.[14] Therefore, as plaintiff surmises the interrelatedness of the claims precludes a finding that the fee requests are severable and distinct, and accordingly, all defendants are found joint and severally liable for this Court's award of attorney fees.[15] In opposition, Struck argues that the Court has already addressed the plaintiff's joint and several liability argument, and upheld the trial justice's denial of the motion to alter or amendment the judgment, finding that the jury did not proceed from a clearly erroneous basis. SeeCady, 862 A.2d at 222.
To assist the trial justice in making a fee determination in a given case, our Supreme Court concluded that affidavits or testimony are required in order to establish the criteria on which a fee award is to be based. Colonial Plumbing HeatingSupply Co. v. Contemporary Constr. Co., Inc., 464 A.2d 741, 744
(R.I. 1983). An attorney's fee should be "consistent with the services rendered, that is to say, which is fair and reasonable . . . which depends, of course, on the facts and circumstances of each case." This determination must take into consideration the factors outlined in Art. V, Rule 1.5 of the Supreme Court Rules.Id. at 743(quoting Palumbo v. United States Rubber Co., 102 R.I. 220, 229 A.2d 620 (1967)). In the instant matter, plaintiff's counsel submitted affidavits from several professionals engaged in the practice of law within the State of Rhode Island. Said individuals attested to the reasonableness of the hourly rate quoted by counsel and the fees requested, taking into account the "fairly complex and sophisticated matter, from a litigation standpoint."[16] This Court agrees that this matter involved complex, interrelated issues that are not severable and distinct.
The Court must focus on the reasonableness of the fees requested while critically factoring in the "degree of success obtained." Hensley, 461 U.S. at 436. The defendants argue that the plaintiff unnecessarily staffed two attorneys and amended the original complaint to include additional claims which were not "successful"; however, these arguments fail to provide this Court with the necessary basis for determining whether counsel's requested fees are in fact "unreasonable." Rather, they focus on the tactical decisions made by plaintiff's counsel throughout the course of the litigation. While plaintiff's counsel's decisions may not mirror those that the defendants would have made, other attorneys, through sworn affidavits, have attested to the reasonableness of such. Furthermore, this Court, in exercising its discretion in fee award determinations, must assess the reasonableness of the request taking into consideration the facts and circumstances in a particular case. In assessing the litigation as a whole, there has been no evidence presented to support the contention that the plaintiff's staffing of two attorneys was unreasonable. Additionally, there is no evidence that plaintiff's case did not in fact require the services of both attorneys. Rather, the defendants merely provided this Court with conclusory opinions as to the unreasonableness of such a decision.[17]
In reviewing the time records submitted by plaintiff's counsel and while this Court recognizes certain instances in which both attorneys billed for the same services, the majority of services were rendered independently. After presiding over a three-week trial on this matter, having observed the work product of counsel, as well as having listened to the complex issues which were litigated, this Court finds that the staffing of two attorneys and counsel's tactical trial decisions were in toto neither unreasonable nor excessive. However, the Court will apply an across-the-board deduction of 50 hours from each billing of plaintiff's counsels in order to account for any duplicative services that may have been rendered by plaintiff's counsel.[18]
C. Interrelatedness of Claims
Since the plaintiff did not prevail, on all claims raised,[19] this case may be referred to as a "mixed success," and in such instances the United States Supreme Court instructs that "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."Hensley, 461 U.S. at 435. (Emphasis added.) While there is no precise formula offered by the Court to assist lower courts, in making a determination of a plaintiff's overall success or the relatedness of claims, the Court reemphasized the discretion the lower court retains in making a fee award. The lower court has a "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters," and must in making its determination provide a concise and clear explanation for its award. Id. at 437.
This Court is intimately aware of the factual issues presented by counsel and in its discretion, this Court supports the plaintiff's argument that the claims were interrelated and that the degree of success obtained resulted from the plaintiff's presentation of the claims in such a manner. The Court, from its understanding of the litigation, ascertains that certain claims were clearly unsuccessful or unrelated[20] — noting that the jury did return verdicts in the defendant's favor. The contemporaneous notes of plaintiff's counsel do not address or explain which claim(s) the task was directed toward. As noted inHensley, infra in a "mixed success case hours spent on unsuccessful claims must be excluded if they are `separate and distinct' from the successful claims, and the fee awarded should be limited to that which is reasonable in relation to the results received." Id. at 434-35. (Emphasis added.) Therefore, the Court assessed a ten percent (10%) reduction from each counsel by which to reduce the fee request so as to account for those clearly unsuccessful claims.
D. Joint and Several Liability of an Award
After the jury's verdict, the trial justice denied the plaintiff's motion to amend the judgment, or in the alternative to order a new trial on the issue of liability. On appeal, the Supreme Court upheld the trial justice's decision and further provided that there was no evidence that the jury did not understand the separate verdict sheets provided them so as to warrant the Court holding the corporate defendants jointly liable for the damages awarded against Struck. Cady,862 A.2d at 221-22. At trial, the jury had an opportunity to assess damages against each defendant, as they were presented as individual defendants through the course of the litigation; however, the issue of attorney fees requires a slightly different analysis. Since plaintiff's counsel appeared to devote most of its time to the litigation as a whole, wherein the majority of the claims were brought against all defendants, it is difficult to now argue that the associated fees should be assessed individually.[21]
Attorney fees are permissible in connection with the breach of contract claim because paragraph 16 of the Agreement expressly provides for such; however, defendant Struck is not a party to said Agreement. While the surrounding claims may be interrelated to the breach of contract action as a whole, the Court must reduce the fee request to account for Struck's lack of accountability on said claim.[22] The liability for the remaining statutorily permitted fees[23] should be sharedequally amongst all defendants because the applicable verdicts, not taking into consideration whether monetary damages were awarded, were in the plaintiff's favor. However, since the defendants were treated as separate throughout the entire course of the litigation, the award of attorneys fees should be apportioned between Struck and the corporate defendants, not borne entirely by any one defendant.
II. Corporate Defendants' Cross-Motion for Attorney Fees
The corporate defendants filed a cross motion for attorney fees incurred in their defense of plaintiff's motion for preliminary injunction, which sought to prevent the corporate defendants from enforcing the non-compete provision of the Agreement.[24] A full hearing, with live testimony, submissions of memoranda of law, and legal arguments by counsel was held before Justice Silverstein on February 12, 1999 and February 15, 1999. Following the hearings, this Court denied the plaintiff's motion without prejudice.
Attorney DiOrio submitted an affidavit and attested that he reviewed the billing records submitted by Attorney Bush,[25] the attorney of record in this matter at the time plaintiff filed his motion, and that the services rendered and the associated billing were reasonable.[26] The corporate defendants ask this Court for an award of attorney fees in the amount of $16,038, arguing that the Rule 65 motion sought independent relief from any claim for damages, and the Court's denial of said motion deems the defendants the prevailing party in that particular legal action. The plaintiff argues that the corporate defendants did not prevail on the motion, since a denial of his motion did not constitute a final judgment in the case and remained subject to the ultimate resolution of the matter, upon which he prevailed. Accordingly, this Court should not award attorney fees to be used as a setoff against plaintiff's award.
The contractual terms provide that attorneys' fees and costs shall be payable to the prevailing party "in connection with anylegal action to enforce the terms of this Agreement." (See
Employment Agreement, ¶ 16) (Emphasis added.) Black's LawDictionary defines an "injunction" as "[a] court order commanding or preventing an action," and a "preliminary injunction" as "[a] temporary injunction issued before or during trial to prevent an irreparable injury from occurring before the court has a chance to decide the case." Black's Law Dictionary
800 (8th ed. 2004). The plaintiff's argument that the denial was not a final judgment does not change the express and broad contractual provision which provides relief to a prevailing party in any legal action.[27]
Under Rule 65 of the Superior Court Rules of Civil Procedure, such a motion must be brought before a justice of the Court who will deny the motion or issue an order permitting such; accordingly, this Court finds that such required procedures fall within the broad contractual term permitting attorney fees for success on "any legal action." The plaintiff's motion was denied and ultimately the corporate defendants prevailed in sustaining their right to enforce the non-compete provision of the Agreement. In applying the same analysis extensively described herein, this Court will focus on the fact that the corporate defendants were the prevailing party, as they achieved a significant result in their defense of the motion. Accordingly, the corporate defendants are entitled to the reasonable attorney fees in the amount of $16,038 incurred in the litigation of this particular action.
III. Supplement to Motion for Attorney Fees
The plaintiff's "Supplement to Motion for Attorney Fees" was filed following the filing of the Supreme Court's decision on December 20, 2004. In reading the supplemental motion, the plaintiff seemingly intended to present to this Court an update of the fees rendered through the appeal to the Supreme Court. The corporate defendants object to motion, arguing that Rule 7(b) of the Superior Court Rules of Civil Procedure does not expressly provide for filing of "supplements" to motions pending before the Court.[28] Further arguing that there is no provision that permits this Court to consider "supplemental" information regarding attorney fees two years after the hearing on this issue was closed.
Under paragraph 16 of the Agreement, the provisional language authorizing attorney fees, includes "such costs and fees onappeal, if any." (Emphasis added.) There is no evidence before this Court to support the corporate defendants' argument that, having not yet rendered a decision with regard to attorney fees, this Court is precluded from considering costs incurred throughout the appeal. The express contractual language provides for such costs, and accordingly, this Court is authorized to consider such records in making its determination.
 CONCLUSION
In light of the jury verdicts rendered in the plaintiff's favor, this Court finds that the plaintiff achieved significant results with regard to the relief sought in this matter. Therefore, an award of reasonable attorney fees, in the plaintiff's favor, is appropriate in accordance with the express terms of the Agreement he entered into with the corporate defendants. An across-the-board deduction, in the amount of 50 hours, will be made in order to account for any duplicative services which may have been rendered. Additionally, the corporate defendants are entitled to an award in the amount of $16,038, for prevailing on the Rule 65 petition ruled upon in February of 1999. This amount will serve as a set-off to the plaintiff's award of attorney fees.
Accordingly, the plaintiff is awarded a total of $156,322.13[29] in attorney fees, plus his costs and post-judgment interest, as the prevailing party in this matter. Counsel shall submit the appropriate form of order for entry by the Court.
[1] Paragraph 16, Attorneys' Fees and Costs, provides, "[I]n connection with any legal action to enforce the terms of this Agreement, the prevailing party in such action shall be entitled to receive from the other party all costs incurred inconnection therewith, including reasonable attorneys' fees, legal assistant, investigator and other paralegal and clerical fees and costs, including such costs and fees on appeal, if any." (Emphasis added.)
[2] The plaintiff alleged breach of contract against corporate defendants (count 1) and the following counts against all defendants: interference with a contract (count 2); interference with business relations (count 3); violation of the federal wiretapping statute found at 18 U.S.C. § 2510 (count 4); violation of the Rhode Island wiretapping statute found at G.L. 1956 § 12-5.1-13 (count 5); invasion of privacy (count 6); violation of a state criminal statute pursuant to G.L. 1956 §9-1-2 (count 7); defamation (count 8); intentional infliction of emotional distress (count 9); and negligent infliction of emotional distress (count 10). Cady, 862 A.2d at 209.
[3] The corporate defendants argue that the jury's award of $268,528 was the only monetary judgment awarded against them, and only $18,000 more than they allegedly offered to settle prior to trial and 40% of what was actually demanded. Therefore, the corporate defendants contend the plaintiff did not achieve significant results, and should only be awarded 10-15% of the requested fees. However, on remand the Supreme Court instructed the Superior Court to enter a judgment for $686,342 on the breach of contract claim, an amount considerably greater than the purported offer. Cady, 862 A.2d at 223-24.
[4] According to the records attached to Plaintiff'sSupplement to Motion for Attorney Fees, Attorney Michaelson billed 599.5 hours and Attorney Dodd billed 391.25 hours in this matter.
[5] See OCG Microelectronic Materials, Inc. v. White Consol.Indus., Inc., 40 F.Supp.2d. 83, 86 (D.R.I. 1999) (holding that the Rhode Island Supreme Court has acknowledged across-the-board reductions of attorneys' fee request without explaining how it calculated the reduction.)
[6] The corporate defendants "strongly suggest[ed] that an award equivalent to 10%-15% of the amount requested by Plaintiff be awarded." (IMC/RMC's Post-Hearing Memorandum RegardingMotions Seeking Attorney Fees, at 12.) Whereas, the plaintiff concedes that a "modest across-the-board reduction would be appropriate for the extremely limited tasks which specifically related to specific counts." (Plaintiff's Response to IMC'sClosing Argument, at 4.) Plaintiff previously stated, in a memorandum filed October 27, 2002, that he would not object to a "2.5% across the board deduction in the hours requested." (Plaintiff's Reply Memorandum Concerning Attorney Fees, at 17.)
[7] See Affidavit of Anthony J. DiOrio, ¶ 20, stating that the total fees sought in connection with the preliminary injunction is $16,038.00, and if awarded, this amount should be used to set-off the plaintiff's award of attorney fees.
[8] The following factors are to be considered in determining the reasonableness of a fee:
 (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
 (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
 (3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
 (5) the time limitations imposed by the client or by the circumstances;
 (6) the nature and length of the professional relationship with the client;
 (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and.
(8) whether the fee is fixed or contingent.
[9] Attorney fees are permissible under the Federal Wiretapping Statute at 18 U.S.C. § 2520 and G.L. 1956 § 12-5.1-13. The court "may" award reasonable fees under G.L. 1956 § 9-1-28.1.
[10] This Court is citing to the most recent edition, however, in the Keystone decision our Supreme Court cited to Black'sLaw Dictionary, 7th Edition, wherein "prevailing party" is defined as a "party in whose favor a judgment is rendered, regardless of the amount of damages." Keystone Elevator Co.,850 A.2d at 918.
[11] While the federal cases addressing attorney fees predominantly pertain to federal civil rights claims, they are nonetheless instructive to this Court in deciphering who qualifies as a "prevailing party" and deciding upon the reasonableness of a requested fee.
[12] The corporate defendants cite to Ruiz-Rodriguez v.Colberg-Comas, 882 F.2d 15 (1st Cir. 1989) in support of their argument that an award of zero damages is essentially a defendant's judgment. However, the corporate defendants failed to distinguish the claims in each case and to acknowledge that inRuiz, the plaintiff claimed serious psychological injury and the District Court held that the jury's non-award had a "rational basis in the record," and thus, was warranted. The Court further noted that in order to ascertain compensatory damages for mental suffering a plaintiff must show that in "some appreciable
measure the health, welfare and happiness of the claimant werereally affected." Id. at 17.
[13] See Plaintiff's Reply Memorandum Concerning AttorneyFees, at 2.
[14] See Blum v. Stenson, 465 U.S. 886, 892, n. 5 (1984) (holding that without evidence of the accuracy and unreasonableness of the hours charged, the Court declined to conduct an evidentiary hearing or to hear challenges to the District Court's determination that the hours billed were reasonable for cases of similar complexity.)
[15] The corporate defendants oppose the plaintiff's contention of interrelatedness and request that this Court ascertain which aspects of counsel's work were dedicated to the breach of contract claim or reduce the total requested fee by an across-the-board discount. Defendant Struck argues that the breach of contract claim, an agreement to which he was not a party, is unrelated to the claims with which he was associated, and without identification of services rendered on specific claims the plaintiff's fee should be "denied or dramatically reduced." See Struck's Post-Hearing Memorandum ConcerningAttorneys' Fees, at 2.
[16] See Aff. Anthony E. Grilli, Aff. Frank Caprio, Aff. Angelo Marocco, Aff. Lester Salter (Attached to Plaintiff'sMemorandum of Law In Support of Motion to Assess Attorneys' Feesand Costs).
[17] See Pontarelli, 781 F. Supp. at 121 (holding that total disallowance of a fee may be justified when there is evidence that a fee application is "grossly and intolerably exaggerated, or manifestly filed in bad faith" or that there existed a lack of good faith effort to eliminate time expended on separate unsuccessful claims or litigants or to exclude hours which were "excessive, redundant, or otherwise unnecessary," which may warrant a denial of a fee request.)
[18] See OCG Microelectronic Materials, Inc.,40 F. Supp. at 86.
[19] The jury found in favor of defendants on the defamation and intentional infliction of emotional distress claims. Cady,862 A.2d at 210.
[20] See Hensley, 461 U.S. at 440 (holding that the hours spent on an unsuccessful claim should be excluded as a whole, in considering the amount of a reasonable fee, when the plaintiff has failed to prevail on a claim that is distinct in allrespects from his successful claims). (Emphasis added.)
[21] It is noted that the corporate defendants argue that the plaintiff was not successful on the majority of its claims because the jury did not award monetary damages; however, this Court's analysis of the plaintiff's prevailing party status was discussed and established in Section I (A) of this Decision.
[22] This Court must also consider the jury's verdict against defendant Struck for invasion of privacy in violation of G.L. §9-1-28.1. Pursuant to subsection (b), "[t]he court having jurisdiction of an action brought pursuant to this section may
award reasonable attorneys' fees and court costs to the prevailing party. (Emphasis added.)
[23] The jury found the defendants in violation of both the federal wiretapping statute found at 18 U.S.C. § 2510 and the Rhode Island wiretapping statute found at G.L. 1956 12-5.1-13.
[24] The "Non-Competition and Proprietary Information" clause is found at ¶ 4 of the Employment Agreement.
[25] Attorney Bush billed a total of 5.2 hours in 1998, at a rate of $165 per hour, and a total of 75.9 hours in 1999, at a rate of $200 per hour, for a total of $16,038.00. See Aff. Anthony J. DiOrio, ¶ 5.
[26] The bills have been redacted so that only those billed items which reflect work performed with respect to the preliminary injunction appears, and only those hours billed for said motion have been presented to the Court. Id. at ¶ 4
[27] "An action has been defined to be an ordinary proceeding in a court of justice, by which one party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense. But in some sense this definition is equally applicable to special proceedings. More accurately, it is defined to be any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree. The action is said to terminate at judgment." Black's Law Dictionary 31 (8th ed. 2004) (quoting 1 Morris M. Estee, Estee's Pleadings, Practice and Forms § 3, at 1 (Carter P. Pomeroy ed., 3d ed. 1885) (emphasis added.)
[28] Superior Court Rules of Civil Procedure, Rule 7(b) Motions and Other Papers.
 (1) An application to the court for an order shall be by motion which, unless made during a hearing or trial or during the course of a deposition, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.
 (2) The rules applicable to captions, signing, and other matters of form of pleadings apply to all motions and other papers provided for by these rules.
 (3) The following motions shall be deemed to be granted as a matter of course and shall not be placed on the motion calendar unless objection stating the particular ground therefor is served and filed at least 3 days before the time specified for its hearing:
 i. A motion to assign, which shall indicate the calendar to which assignment is desired.
ii. A motion to consolidate cases for trial,
 iii. A motion to enlarge the time for permitting an action to be done under Rule 6(b)(2) after the expiration of the specified period,
 iv. A motion for leave to serve third-party complaints under Rule 14,
v. A motion to amend pleadings under Rule 15,
 vi. A motion for an order for physical or mental examination under Rule 35, and
 vii. A motion under Rule 26 or Rule 37 to obtain a protective order, or to compel discovery.
 A motion to compel discovery or more responsive answers thereto shall specify the number of days for compliance. The provisions of Rule 6(d) shall not apply to this subdivision.
 (4) All motions shall be signed in accordance with Rule 11.
[29] Of that amount, the sum of $106,328.25 for Mr. Michaelson and $66,031.88 for Mr. Dodd.